Dominique GUYTON, Appellant (Defendant),

v.

STATE of Indiana, Appellee (Plaintiff).

No. 49S00–0002–CR–105.

Supreme Court of Indiana.

July 25, 2002.

Teresa D. Harper, Bloomington, Indiana, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Arthur Thaddeus Perry, Deputy Attorney General, Indianapolis, Indiana, Attorneys for Appellee.

SHEPARD, Chief Justice.

Dominique Guyton was found guilty of numerous offenses arising out of a shooting incident on the streets of Indianapolis. His appeal provides an occasion to recapitulate our recent decisions on Double Jeopardy.

### Facts and Procedural Background

On April 23, 1998, Indianapolis police officers found the body of Pax Larrimore lying in the street in the 4300 block of Norwaldo Avenue. He had died from two gunshot wounds to the chest and abdomen. As the investigation unfolded, Guyton became a suspect. Guyton and Larrimore had had several encounters in which Larrimore had shot at Guyton from a car. On April 28, police interviewed Guyton. He admitted to running into Larrimore on the day of the murder and claimed that Larrimore had approached his car on foot and put his hand in his pocket. Guyton, thinking Larrimore was about to pull out a gun, drove away. Guyton denied shooting Larrimore.

Guyton was charged with murder, two counts of attempted murder, and carrying a handgun without a license. At trial, Guyton had a different account. He claimed that on the day of the shooting he went to visit friends at 43rd and Norwaldo. After talking with his friends for awhile, he left when a group of men, including Larrimore, Anthony Butts, Tonio Walker, and Damon Jackson, approached. Guyton next visited Sherry Akers and made plans for later that evening. According to Guyton, after he left Akers, he was driving down Norwaldo when he saw Larrimore flagging him down. When Guyton saw Larrimore's hand on the grip of a gun, he panicked, grabbed his own gun, and fired three or four times.

Butts testified to a third version. According to Butts, Guyton drove up to the group, held his hand out of his car, and fired four shots, one at each of Larrimore, Butts, Walker, and Jackson. He then fired a final shot at Larrimore before driving off. Butts identified Guyton as the shooter from a photo array. According to Jackson, Larrimore did not have a gun that day.

The jury found Guyton guilty of murdering Larrimore, attempting to murder Jackson, and carrying a handgun without a license. He was sentenced to fifty-five years for murder, thirty years for attempted murder, and one year for the handgun violation, all to be served concurrently.

### I. Double Jeopardy Recited

Guyton claims that his convictions for murder and carrying a handgun without a license violate the Double Jeopardy provisions of the Indiana Constitution, citing *Richardson v. State*, 717 N.E.2d 32 (Ind.1999).

We held in *Richardson* that the Double Jeopardy clause is violated if there is "a reasonable possibility that the evidentiary facts used by the fact-finder to establish the essential elements of one offense may also have been used to establish the essential elements of a second challenged offense." *Id.* at 53. As we recently explained, "[U]nder the *Richardson* actual evidence test, the Indiana Double Jeopardy Clause is not violated when the evidentiary facts establishing the essential elements of one offense also establish only one or even several, but not all, of the essential elements of a second offense." *Spivey v. State*, 761 N.E.2d 831, 833 (Ind. 2002).

In addition to the instances covered by *Richardson*, "we have long adhered to a series of rules of statutory construction and common law that are often described as double jeopardy, but are not governed by the constitutional test set forth in Richardson." *Pierce v. State*, 761 N.E.2d 826, 830 (Ind.2002) (citing *Richardson*, 717 N.E.2d at 55 (Sullivan, J., concurring), 57 (Boehm, J., concurring in result)).

Justice Rucker recently pointed out that one of these rules prevents enhancing one conviction for robbery by using a death for which the defendant is also being punished. *Gross v. State*, 769 N.E.2d 1136 (Ind.2002). This comes under the category described by Justice Sullivan as "[c]onviction and punishment for an enhancement of a crime where the enhancement is imposed for the very same behavior or harm as another crime 'for which the defendant has been convicted and punished." *Richardson*, 717 N.E.2d at 56 (Sullivan, J., concurring).

The list of five categories from Justice Sullivan's concurrence in *Richardson* includes one category presumably covered by constitutional Double Jeopardy (an analysis we recently reaffirmed in *Spivey*, 761 N.E.2d at 833), described by Justice Sullivan then as "[c]onviction and punishment for a crime which is a lesser-included offense of another crime for which the defendant has been convicted and punished." *Richardson*, 717 N.E.2d at 56 (Sullivan, J., concurring).

That list also includes:

—"Conviction and punishment for a crime which consists of the very same act as another crime for which the defendant has been convicted and punished." *Id.* (giving the example of a battery conviction vacated because the information showed that the identical touching was the basis of a second battery conviction).

—"Conviction and punishment for a crime which consists of the very same act as an element of another crime for which the defendant has been convicted and punished." *Id.* (giving the example of a confinement conviction vacated because it was coextensive with the behavior necessary to establish an element of a robbery conviction).

—"Conviction and punishment for the crime of conspiracy where the overt act that constitutes an element of the conspiracy charge is the very same act as another crime for which the defendant has been convicted and punished." *Id.* at 56–57 (giving the example of a conspiracy in which the overt act is no more than the crime itself).

As for Guyton's claim, it does not succeed under any of the above. As we said recently, "Carrying the gun along the street was one crime and using it was another." *Mickens v. State*, 742 N.E.2d 927, 931 (Ind.2001).

## II. Attempted Murder Instruction

■ Guyton challenges the trial court's instruction on attempted murder, which said:

A person who knowingly or intentionally kills another human being commits murder.

A person attempts to commit a murder when, acting with the culpability required for commission of the crime of murder, he engages in conduct that constitutes a substantial step toward commission of the murder. The crime of Attempted Murder is a Class A felony.

To convict the Defendant of Attempted Murder, the State must have proved each of the following elements:

The Defendant Dominique Guyton:

1. Acting with the specific intent to commit murder that is by knowingly or intentionally, shooting a deadly weapon, that is a handgun } [sic] at and against

the person of Damon Jackson and/or Anthony Butts.

2. Which was conduct constituting a substantial step toward the commission of intended crime of Attempt Murder.

If the State failed to prove each of these elements beyond a reasonable doubt, you should find the defendant not guilty.

If the State did prove each of these elements beyond a reasonable doubt, you should find the defendant guilty of the crime of Attempted Murder, a Class A felony.

Guyton objected to the instruction on the ground that this instruction failed to meet the standard set forth in *Spradlin v. State,* 569 N.E.2d 948 (Ind.1991). In *Spradlin,* this Court held that attempted murder requires a specific intent to kill, and is not supported by "knowing" actions. *Id.* at 950. *Spradlin* held that the failure to instruct correctly on this point is reversible error.

■■■■ In reviewing a trial court's decision to give or refuse tendered jury instructions, this Court considers: (1) whether the instruction correctly states the law; (2) whether there is evidence in the record to support the giving of the instruction; and (3) whether the substance of the tendered instruction is covered by other instructions which are given. *Cutter v. State,* 725 N.E.2d 401, 408 (Ind.2000). "An instruction which correctly sets forth the elements of attempted murder requires an explanation that the act must have been done with the specific intent to kill." *Smith v. State,* 459 N.E.2d 355, 358 (Ind.1984). The instruction in this case does not meet this requirement, and is therefore an incorrect statement of the law. It begins by telling the jury that it can convict if the defendant acted with the culpability required for murder, which just one paragraph before is described as "knowingly or intentionally." "Knowingly"

is described in another instruction as engaging in conduct when a person "is aware of a high probability that he is doing so." The instruction did refer to the "specific intent to commit murder," but the "specific intent to commit murder" was described as "knowingly or intentionally, shooting a deadly weapon." Guyton is correct that this instruction could be understood by a jury to permit conviction on a knowing killing. It was at best confusing because of its circular reference to "specific intent to commit murder," which leads to the knowing or intentional definition for murder, as well as the other references to "knowingly."

Guyton objected to the instruction on the ground that it did not refer to a specific intent to kill. This was a valid objection. Because Guyton objected to the instruction and it does not correctly state the law, it was error and his conviction for attempted murder is reversed. *See Allen v. State,* 575 N.E.2d 615, 617 (Ind.1991) ("Had appellant objected to this instruction at trial, giving it would have been error because it does not inform the jury that the State must prove the defendant acted with intent to kill.").

### III. Juror Misconduct

■■■ Guyton finally claims that the trial court abused its discretion in refusing to conduct a hearing on his claim of juror misconduct.

After the trial, Guyton learned that one of the jurors, Frederick Mechum, worked at the Internal Revenue Service with Shirley Amis, Guyton's stepmother. On the first day of trial, Mechum approached Amis and asked if he knew her. She responded that they worked together at the IRS and walked away. On the second day of trial, Mechum and Amis exchanged greetings and again Amis walked away. A few days after trial, Mechum and another coworker approached Amis at work and

asked her whether "that was someone to you, at the trial." Amis replied that it was her son. The next day Amis received a sympathy card for the death of her son from her coworker.

Guyton then filed a request for a hearing to determine whether Mechum's mistaken assumption that Larrimore was Amis' son resulted in any bias against Guyton. This motion was accompanied by an affidavit from Amis reciting the facts described above. The trial court denied the motion.

■ "A defendant seeking a hearing on juror misconduct must first present some specific, substantial evidence showing a juror was possibly biased." *Lopez v. State,* 527 N.E.2d 1119, 1130 (Ind.1988). In this case, even accepting Guyton's facts as true, he has not presented any evidence of juror bias. From the testimony it is clear that Mechum was not sure who Amis was or whether she had any relation to the defendant or the victim. Only after the trial did Mechum ask her relationship to either. Although he was incorrect in his assumption that her response indicated that she was the mother of the victim, not the defendant, this presents no substantial evidence of bias during the trial.

### Conclusion

We affirm the judgment of the trial court as to murder and carrying a handgun without a license. Guyton's conviction for attempted murder is reversed and remanded for retrial.

SULLIVAN and RUCKER, JJ., concur.

DICKSON, J., concurs in result with separate opinion.

BOEHM, J., concurs with separate opinion.

DICKSON, Justice, concurring in result.

### A.

In Part II, the Court acknowledges that Guyton contends that his convictions of murder and carrying a handgun without a license violate the Double Jeopardy Clause of the Indiana Constitution, as implemented in our actual evidence test in *Richardson v. State,* 717 N.E.2d 32, 49 (Ind.1999). The Court does not address this constitutional claim but instead discusses only the related issue of whether his convictions violate the rules of statutory construction and common law that we recognize to provide a basis for relief separate from and additional to the state constitutional claim. *See Henderson v. State,* 769 N.E.2d 172, 178 (Ind.2002); *Pierce v. State,* 761 N.E.2d 826, 830 (Ind.2002); *Spivey v. State,* 761 N.E.2d 831, 834 (Ind.2002).

The unaddressed constitutional claim, however, is not meritorious. To prevail in his asserted violation of the Indiana Double Jeopardy Clause under *Richardson,* Guyton must demonstrate that there is a "reasonable, not speculative or remote," possibility that the jury used the same evidentiary facts to establish all the essential elements of both murder and carrying a handgun without a license. *Griffin v. State,* 717 N.E.2d 73, 89 (Ind.1999), *cert. denied,* 530 U.S. 1247, 120 S.Ct. 2697, 147 L.Ed.2d 968 (2000).

To prove the murder, the State demonstrated that Guyton caused Larrimore's death by shooting him twice with a handgun. It also showed that Guyton carried the gun both when he met with Sherry Akers before the shooting and then later when he used it to shoot Larrimore. In this case there was direct evidence, apart from Guyton's firing the weapon, that he carried a handgun without a license. Guyton testified that before he arrived at the murder scene he had stopped to talk with

Akers and had a handgun wrapped in a towel underneath his leg. He also admitted that he did not have a permit to carry it. Record at 451.

It is not reasonably possible that the jury ignored this evidence and instead based its finding of guilt for the handgun offense solely on the defendant's possession of the weapon at the time he fired it at Larrimore. For this reason, Guyton has failed to establish his claimed violation of the Indiana Double Jeopardy Clause.

### B.

In his separate concurring opinion, Justice Boehm proposes a methodology that modifies the *Richardson* actual evidence test by requiring the evidence proving each offense at trial to be analyzed to determine each constituent "evidentiary fact" or "fact" established by or inferred from the evidence. Thus in this case, Justice Boehm takes the body of evidence showing that Guyton fired a handgun from his car to fatally shoot Larrimore, subdivides it into multiple component "facts," and then concludes that there was no reasonable possibility that the jury based both convictions on the same group of "facts."

It is certainly true that throughout *Richardson,* we used the phrase "evidentiary facts" instead of "evidence." We used "evidentiary facts" when first articulating the test, *id.* at 53, when we applied the test to the facts of the case, *id.* at 54, and when evaluating the proper remedy, *id.* at 55. *See also id.* at 53 n. 46 (noting that the Indiana Double Jeopardy Clause permits convictions for multiple offenses committed in a protracted criminal episode when the verdicts are not "based on the same evidentiary facts."). However, there is nothing in *Richardson* or the analysis on which it is based to support the parsing of one evidentiary fact to create multiple evidentiary facts.

Justice Boehm's proposed analysis, I believe, significantly lessens the protection provided by the Indiana Double Jeopardy Clause. If this methodology had been followed in several of our earlier post-*Richardson* opinions that found double jeopardy violations, we would have reached an opposite result.

For example, in *Turnley v. State,* 725 N.E.2d 87 (Ind.2000), the defendant and an accomplice broke into a home to steal money and agreed to kill the female occupant if necessary. While Turnley held her hands, his accomplice choked her to death. Turnley was convicted of multiple crimes including both murder and conspiracy to commit murder. The conspiracy count alleged that Turnley's restraint of the victim was the overt act element of conspiracy. Under Justice Boehm's proposed methodology, a reviewing court would break the evidence into component "evidentiary facts" including: (1) Turnley and his accomplice agreed to kill the victim; (2) they intended to kill; (3) Turnley assisted by restraining the victim; (4) the accomplice strangled her; and (5) the victim died from the strangulation. Using the proposed analysis the court would then determine that the jury used "evidentiary facts" (1), (2) and (3) to establish the essential elements of the conspiracy count, and that the jury used "evidentiary facts" (2), (4), (5) and possibly (3) to establish the murder. The result would be that there is no double jeopardy because there is no reasonable possibility that the jury relied upon the same body of "evidentiary facts" to establish both offenses, *i.e.,* no possibility that all the "evidentiary facts" establishing one offense are included among those that establish another offense, or stated differently, no possibility that the "evidentiary" facts used by the jury to establish all the elements of one offense were also used to establish all the elements of another offense.

Our opinion, however, reached the opposite result. Finding a violation of the Indiana Double Jeopardy clause, we held that "there is at least a reasonable possibility—indeed a high probability—that the jury used the same evidentiary fact—the restraining and strangulation of [the victim]—to prove an essential element of the conspiracy to commit murder (the overt act) and also the essential element of murder." *Turnley*, 725 N.E.2d at 91.

The methodology proposed by Justice Boehm would also have required a different result in *Richardson* itself. There the defendant and several others brutally beat the victim and took his wallet. The proposed methodology would parse this evidence into several component "evidentiary facts" including: (1) defendant intended to batter; (2) defendant intended to take the wallet; (3) defendant and others beat the victim; (4) they took the victim's billfold; (5) the victim suffered injuries. It would then be probable to conclude that the jury used "evidentiary facts" (1), (3), and (5) to prove class A misdemeanor battery, but used "evidentiary facts" (2), (3), and (4) to establish class C felony robbery. As in *Turnley*, above, there would be no reasonable possibility that the jury used the same group of "evidentiary facts" to establish all the elements of both offenses, and thus no double jeopardy. In *Richardson*, however, we reached the opposite conclusion and found that the Indiana Double Jeopardy Clause was violated. Without disaggregating the evidence into separate "evidentiary facts," we concluded that the same body of evidence (brutal beating plus taking wallet) may reasonably have been used by the jury to prove both offenses.

I acknowledge that, in many cases where a defendant is convicted of both an offense committed with a handgun and the offense of carrying a handgun without a license, the *Richardson* actual evidence test may, at first blush, appear to require that the handgun offense be vacated. The same evidence proving an offense involving use of a handgun would also appear to prove the elements of carrying a handgun without a license—if we presume that, because the existence of a license is a matter of affirmative defense for the defendant, it is not considered as an element of the offense. *See* Ind.Code § 35–47–2–24; *Washington v. State*, 517 N.E.2d 77, 79 (Ind.1987). I contend, however, that this presumption is inappropriate.

To determine if a defendant has been punished twice for the same offense under the *Richardson* actual evidence test, a better approach is to consider all three statutory elements of the offense of carrying a handgun without a license: (a) carrying a handgun in any vehicle or on or about his person (b) except in his dwelling, his property, or fixed place of business, (3) without a proper license in his possession. Ind. Code § 35–47–2–1.[1] This is not necessarily inconsistent with *Washington* because it was addressing whether the existence of a license is an element that must be disproved by the State or a matter that constitutes an affirmative defense to be proved by a defendant. 517 N.E.2d at 79. It was in this context, not that of double jeopardy, that we declared in *Washington:* "Proof that a defendant does not possess a license to carry a handgun is not an element of . . . the statute which delineates this crime." *Id.* at 79.

---

1. Indiana Code § 35–47–2–1 provides: "Except as provided in section 2 of this chapter, a person shall not carry a handgun in any vehicle or on or about his person except in his dwelling, on his property or fixed place of business, without a license issued under this chapter being in his possession." Indiana Code § 35–47–2–24 declares in part, "The burden of proof is on the defendant to prove that he is exempt under section 2 of this chapter, or that he has a license as required under this chapter."

In contrast to this language in *Washington*, our Court of Appeals recently found no violation of the Indiana Double Jeopardy Clause under the *Richardson* actual evidence test by assessing the "essential elements" of the offense of carrying a handgun without a license to include both the elements which the State must prove and that which the defense must prove. *Ho v. State*, 725 N.E.2d 988 (Ind.Ct.App. 2000). In essence, the *Ho* court held that there was no violation of the Indiana Double Jeopardy Clause because the evidence used by the jury to establish robbery while armed with a handgun did not also relate to whether or not Ho possessed a valid license. *See id.* at 993. In applying the actual evidence test for violation of the Indiana Double Jeopardy Clause, the *Ho* court used the term "element" in a different sense than it was used in *Washington,* where we used the phrase "not an element" merely to succinctly express the idea that such proof is not an element on which the State carries the burden of proof. We recently expressed approval of *Ho* in *Mickens v. State,* 742 N.E.2d 927, 931 (Ind.2001), which also rejected a double jeopardy claim arising from convictions for murder and carrying a handgun without a license.

In the present case, even if we did not consider the separate evidence of Guyton's unlicensed possession of the handgun before he arrived at the murder scene, Guyton's convictions for murder and carrying a handgun without a license would not violate the Indiana Double Jeopardy Clause. There would be no reasonable possibility that the evidentiary facts used by the jury to establish the elements of murder were also used to establish the essential elements of carrying a handgun without a license. The evidence proving the murder did not involve the existence or absence of a license for the handgun, and the facts proving carrying an unlicensed handgun did not include the resulting death of the victim.

BOEHM, Justice, concurring.

The Court today affirms Guyton's convictions for murder and possession of a handgun based on our holding in *Mickens v. State,* 742 N.E.2d 927 (Ind.2001), that possessing the gun is one crime and killing with it is another. I agree, but I believe we need to explain how this ruling relates to the double jeopardy doctrine announced in *Richardson v. State,* 717 N.E.2d 32 (Ind.1999), which the Court cites, then does not mention again. I also believe we should directly address Guyton's claim that *Richardson* precludes use of the same evidence—Butts' testimony—to convict him of both crimes.

In *Richardson,* a three Justice majority announced an "actual evidence" test for double jeopardy under the Indiana Constitution as applied to multiple convictions in the same trial. *Richardson* formulated the test for Indiana constitutional double jeopardy as whether there is a "reasonable possibility" that the "evidentiary facts" supporting one conviction were used by the jury to support another. In substance, applying this *Richardson* test means opting for (1) psychoanalyzing the jury based on evidence, argument, instructions and charging instruments and indulging in the irrebuttable presumption the jury followed all of these; (2) the "reasonable possibility" standard to determine whether that occurred, and (3) the requirement that "all" not just one of the "evidentiary facts" overlap.

After citing *Richardson,* the Court today reaffirms several "rules" that preclude imposition of multiple punishments under some circumstances. As formulated by Justice Sullivan's concurring opinion in *Richardson,* these turn in large part on whether the "very same act" supports two convictions. The problem *Richardson*

sought to address, albeit with a slim majority, was how we know when we have two crimes supported by the "very same act." I think we owe an explanation of this mystery because I believe today we have in effect abandoned *Richardson*, and should be explicit in doing this so future trial and appellate courts can follow a consistent methodology in reviewing double jeopardy claims.

Guyton's claim under a *Richardson* analysis is a claim that the evidentiary facts supporting his handgun conviction are included in those supporting his murder conviction. The Court makes no mention of what the jury might have found, and there is no reference to the "reasonable probability" standard. Rather, we are told, and I agree, that carrying the handgun is one thing and firing it is another. For the reasons that follow, I believe this represents an abandonment of *Richardson* and a return to the pre-*Richardson* methodology of reviewing the evidence, instructions, charging instrument and argument of counsel under a de novo standard to determine whether it is more probable than not that the facts supporting one conviction are embraced within those supporting another. On this basis, I concur in the Court's opinion.

### A. *Some History*

Justice Sullivan, concurring in *Richardson*, identified several situations in which two convictions cannot coexist. They were: 1) lesser included offenses; 2) the two crimes "consist of the very same act"; 3) one crime consists of the very same act as an element of the other; 4) an enhancement of one crime "imposed for the very same behavior or harm" as another crime; and 5) conspiracy where the overt act is the very same act as another crime. I thought then, and think now, that the double jeopardy clause of the Indiana Constitution has other and more important work to do in addressing subsequent prosecutions. *Richardson*, 717 N.E.2d at 57–73 (Boehm, J., concurring in result). However, under stare decisis, I accept the Court's view that the Indiana Constitution addresses multiple convictions.

*Richardson* sought to establish "a single comprehensive rule [of double jeopardy] synthesizing and superseding previous formulations and exceptions." *Spivey v. State*, 761 N.E.2d 831, 832 (Ind.2002). Subsequent experience has made clear that this goal was not achievable, at least not without upsetting a number of the precedents supporting the rules cited by Justice Sullivan. For example, the requirement of *Richardson* that all facts of one crime be embraced within that of the other limits its application to the rules prohibiting conviction for lesser included offenses. In recognition of the incompatibility of the actual evidence test with these precedents, *Pierce v. State*, 761 N.E.2d 826 (Ind.2002), acknowledged that some of these doctrines were not of constitutional dimensions and were not governed by *Richardson*. Accordingly some of these rules (e.g., the same bodily injury does not elevate two crimes) are not subject to a *Richardson* analysis, and can prohibit double enhancement through a single common element. At the same time, in *Spivey*, we reiterated that the *Richardson* constitutional test required all, not just one, of the "evidentiary facts" of one crime to be embraced within those of another before the constitutional test of *Richardson* would bar two convictions. *Spivey*, 761 N.E.2d at 833.

I concur in everything the Court says. I nevertheless believe the widespread confusion reflected in the Court of Appeals cases attempting to apply *Richardson* requires us to try to explain how future cases are to be analyzed.[2] The first Sulli-

2. *See, e.g., Vestal v. State,* 745 N.E.2d 249, 251–52 (Ind.Ct.App.2001) (concluding that a

van rule is the statutory elements test, identical to federal double jeopardy under *Blockburger v. United States,* 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932). The second and third prohibit dual convictions under an analysis substantially the same as identification of a "factually" lesser included offense, as that term is explained in *Wright v. State,* 658 N.E.2d 563 (Ind. 1995).[3] Both *Richardson* and *Wright* teach that we look to the charging instruments and evidence to determine whether one crime is a "factually" lesser included offense. *Richardson* and several of its progeny make clear that the charging instrument,[4] the instructions,[5] arguments of counsel,[6] and the evidence itself[7] may be relevant to a determination whether the "evidentiary facts" of one crime are included among those of another.

The fourth Sullivan rule requires us to determine whether "the very same behavior or harm" enhanced two crimes, but we are not told how that is to be determined or reviewed on appeal. The fifth similarly turns on whether the overt act supporting a conspiracy is "the very same act" as another crime. All of the foregoing is acceptable to me, but I think we should be clear what we are doing and what we expect the Court of Appeals to do in reviewing these claims. Accordingly, I set forth how I think we are, or should be, approaching these claims in light of the Court's holding today.

## B. The "Actual Evidence," or "Same Facts," Test Under Richardson

Although the "actual evidence" test has acquired that sobriquet, in my view it could also have been accurately described as a "same facts" test. *Richardson* described it as "a reasonable possibility that the evidentiary facts used by the factfinder to establish the essential elements of one offense may also have been used to establish the essential elements of a second challenged offense." 717 N.E.2d at 53. Thus, to prevail under that test, *Richardson* taught that Guyton must demonstrate a "reasonable possibility" that the same "evidentiary facts" used by the jury to establish the essential elements of the murder charge were also used to establish the essential elements of the handgun offense. And, as we recently noted in *Spivey v. State,* 761 N.E.2d 831 (Ind.2002), the "use" of facts establishing one crime to establish a second means all, not just some, of the evidentiary facts establishing one are included among the evidentiary facts establishing the other.

By "evidentiary fact," I take *Richardson* to mean the events found to have occurred, without regard to their legal consequences and independent of the terms lawyers and judges may use to describe them or the legal results these facts produce. Some might prefer the simple term "fact," or "historical fact" or "event or circumstance." The Court today uses "the very same act." By that term, I think the

---

"strict application of *Richardson*" in that case would lead to "absurd results").

3. *Wright* held that where one offense is factually lesser included in another, viewed in light of the charging instrument and the evidence, an instruction on the lesser included offense is required if requested. Because *Wright* set out the steps to determine whether an instruction was needed, obviously this analysis, unlike *Richardson,* did not require reference to an instruction.

4. *Richardson,* 717 N.E.2d at 50.

5. *Guffey v. State,* 717 N.E.2d 103, 107 (Ind. 1999).

6. *Johnson v. State,* 749 N.E.2d 1103, 1109 (Ind.2001).

7. *Wieland v. State,* 736 N.E.2d 1198, 1205 (Ind.2000).

Court also means the same thing as "same fact" in its embrace of the Sullivan rules. But using the term "same act" is problematic because it limits review of the facts to what the defendant did. Some elements of crimes are the consequences or circumstances of the crimes. Thus the same "act"—e.g., burning down a building—can result in conviction of two murders if there are two victims. *Cf. Burnett v. State*, 736 N.E.2d 259, 263 n. 3 (no double jeopardy where there are multiple victims). For this reason I believe it is more useful to use "fact" rather than "act" to describe the overlap that precludes conviction for two crimes.

Finally, *Richardson* refers to "essential elements." Because proof of all elements of a crime is essential to conviction, I use "elements" interchangeably with "essential elements." I understand that *Richardson's* majority intended the latter term to include not only statutory elements, but also the elements as charged. Thus, although the statutory elements of a felony murder are killing in the course of a felony, if the charging instrument alleges killing in the course of a robbery on June 13, 1999, these then are among the "essential elements" as charged. It is in this sense that I use the term "elements" to mean what needs to be proven to satisfy the statute and the charging instrument.

### C.  *Unanswered Questions*

Justice Sullivan's rules, as he formulated them and as the Court states and applies them today, do not turn on a *Richardson* analysis. Each of them requires a determination whether "the very same act" or the "very same behavior or harm" is involved in two crimes, but none elaborates how that determination is to be made. When the Court tells us that none of the five Sullivan rules is breached by Guyton's convictions, it impliedly holds that (1) the handgun and murder convictions were not based on the very same act and (2) no

element of either crime consisted of the very same act that constituted the other. The Court's formulation gives us a result: carrying the gun and firing it are two different things. I agree, but this explanation does not address any of the following issues:

1) Is this a ruling on a point of law or a finding of fact?

2) Guyton's claim is that the same evidence established both the carrying and the firing of the gun, and this violates *Richardson*. Is the evidence in Guyton's case relevant to this finding by this Court? If not, how does *Richardson* relate to this case? If *Richardson* is applicable, how do we determine whether there is a "reasonable possibility" that the jury used the same facts to find Guyton guilty of the possession and murder charges?

3) If the trial court made a finding on this point, what standard of review applies?

4) Is this determination that these do not overlap to be measured by the "reasonable possibility" of overlaps, or a preponderance of the evidence, or something else?

### D.  *Of Evidence, Facts, Elements and Conclusions*

I believe one critical point for purposes of analyzing factually "lesser included" crimes under *Richardson* or otherwise (Justice Sullivan's second and third rules) is that the law prohibits sentencing for two convictions if the *facts* supporting one conviction are embraced within the facts supporting the other. But it does not preclude two convictions if each is based on a fact that is not required for the other. Guyton contends that the jury used the same fact—his carrying a firearm that he discharged at Larrimore—to convict him of both murder and carrying a handgun

without a license. This confuses facts with evidence.[8] Guyton correctly points out that the evidence supporting the facts was the same, but I agree with the Court that the facts supported by the evidence—possessing a gun and firing it—are distinct.

In evaluating a claim of double jeopardy, we must distinguish not only between evidence and facts. We must also differentiate the elements and legal conclusions involved in the two crimes. Butts testified that Guyton fired a handgun at the group and, in the process, shot Larrimore. His testimony was *evidence.* Black's Law Dictionary 576 (7th ed.1999) (Evidence is "[t]he collective mass of things, esp. testimony and exhibits, presented before a tribunal in a given dispute."). *Facts* are the historical facts, acts, events or circumstances that a finder of fact, after considering the evidence, concludes occurred. They may include facts directly related by the evidence, and also reasonable inferences as to what happened that are drawn from the evidence. In order to support a conviction, the facts must in the aggregate establish the *elements* of a crime. The elements are the legal terms we use to describe a fact or an aggregation of facts. If each element is found, the finder of fact reaches the *legal conclusion,* or verdict, that a crime has been committed.

Although sometimes we use the same word to describe both a "fact" and an "element," elements are not the same as facts. Rather, elements are words of legal

significance. Thus, a lay person might well describe an event by saying the defendant "forced the door open." But another witness might say the defendant "broke and entered." Both have described a fact that supports an element of burglary, whether or not they used the legal label that is pinned on the element. To further confuse us, some elements and some crimes are described by the same terms we use for the fact. Thus a witness in a rape case might well respond to the question "What happened next?" with "He raped me." But few would respond "He confined me" or "She battered me" to describe those crimes.

In short, despite our occasional or even frequent use of the same word to describe a fact, or an element, or the crime itself, the three are distinct from each other and from the evidence in the case. This is true for purposes of *Richardson's* double jeopardy analysis, and also for purposes of determining the "very same act" under the rules cited by the Court. Only the "facts" are critical for double jeopardy purposes. I use that term to include the Court's term ("act") and also consequences ("multiple victims," "bodily harm") and circumstances ("absence of a license").

### E. *Analysis of this Case Under Richardson*

In my view Guyton's argument arguably prevails under *Richardson.* The facts critical to the murder charge in this case are:

---

8. The distinction was not made as precisely or as clearly as it could have been in the opinions that followed *Richardson.* Compare *Cutter v. State,* 725 N.E.2d 401, 410 (Ind.2000) (referring to same "evidence" rather than "evidentiary facts" and holding that elevating rape to a Class A felony based on the same use of force supporting murder conviction was constitutional double jeopardy) *and Mitchell v. State,* 726 N.E.2d 1228, 1244 (Ind. 2000) (constitutional double jeopardy where killing and bodily injury for Class B neglect

based on same "evidence") *with Marcum v. State,* 725 N.E.2d 852, 864 (Ind.2000) (overt act for conspiracy to commit burglary conviction also basis of auto theft conviction; referring to "evidentiary facts"). In each of these cases, the evidence and the facts were both overlapping, so the result, if not the terminology, is consistent with the analysis offered here. In other words, none of these cases presented the situation we have here, where the same evidence directly or by inference supports multiple facts.

(1) Guyton pointed a gun at Larrimore and shot him; (2) Larrimore died as a result; and (3) Guyton had the requisite mens rea because he either (a) intended to kill Larrimore, or (b) intended to kill someone else in the group under the doctrine of transferred intent, or (c) fired the shot with knowledge of a high probability that the shot would be fatal. The facts relevant to the elements of the handgun charge are (1) Guyton possessed the gun and (2) he did so on a public street. The piece of evidence that Guyton shot Larrimore from the car speaks directly to the fact of the defendant's action (firing the shot), and it also supports the inference of a second fact relevant to the murder charge, namely intent to kill. *Owens v. State*, 544 N.E.2d 1375, 1377 (Ind.1989). Thus, both shooting and the intent to kill are facts directly or inferentially drawn from Butts' testimony that Guyton fired a handgun at the group, and hit Larrimore.

The jury obviously could have inferred the presence and possession of the gun in a public street for some span of time including the instant of its use. If so, *Richardson* would not bar both convictions. But under these circumstances it is not obvious that the jury did draw that inference. That leaves us with a reasonable possibility that the jury "used" the fact of shooting to support the handgun charge. Yet to force the conclusion that *Richardson* permits both convictions we must say there is no reasonable possibility that the same fact—Guyton shot Larrimore—was

"used" by the jury. I think it is more appropriate and certainly easier to follow if we admit that we are holding as a matter of law that the evidence supports both convictions. Thus, Butts' testimony, although one item of evidence might or might not have produced distinct evidentiary facts found by the jury: (1) Guyton shot Larrimore; (2) Guyton had the requisite mens rea; and (3) Guyton possessed a handgun on a public street.[9]

## F. The Court's Holding Today

I agree with the Court that none of Justice Sullivan's rules is breached by Guyton's two convictions. But I think that it takes some explanation as to why that is true, and what methodology is required to reach that conclusion. Guyton was convicted of murder and possession of a handgun without a license. The elements of murder are (1) intentional or knowing (2) killing of (3) a human being. The elements of carrying a handgun without a license are: (1) carrying a handgun in any vehicle or about the person (2) except in one's dwelling, on one's property or fixed place of business.[10] Clearly we have no statutory elements problem here. And it is obvious that the fourth (double enhancement) and fifth (conspiracy) of Justice Sullivan's rules do not apply to this situation.

The remaining issue is whether the same facts support both convictions. It seems to me that the Court today handles this the way pre-*Richardson* appellate courts typically did by determining, under

**9.** I do not think it useful or possible to attempt to reconcile all past cases with this or any other theory. I would say, however, that I think Justice Dickson's view of what we are in substance doing slices matters too thinly. I view the *Turnley* case as an example of Sullivan Rule 5: the overt act supporting the conspiracy cannot be the "very same act" as the crime that is the object of the conspiracy. Turnley's restraint of the victim was the "act" by which he participated in the murder.

Similarly, *Richardson* was governed by Sullivan Rule 3 because his "act" of battery constituted an element of the robbery as a C felony by reason of his use of force. *Richardson*, 717 N.E.2d at 55 (Sullivan, J., concurring).

**10.** The absence of a license is not an element, but rather its presence is an affirmative defense. *Washington v. State*, 517 N.E.2d 77, 79 (Ind.1987).

a de novo review of whatever is relevant, whether the facts of one crime are such that the "same fact" fits one of the Sullivan rules. Thus, just as under *Richardson,* we look to see if, under the statutes, charging instruments, evidence and arguments of counsel, it seems to us that the facts establishing one crime are the same as the facts establishing another (Rule 2) or establishing one or more elements of another (Rule 3). But we do this de novo, and without any effort to analyze what the jury might have considered. Whatever the jury's reasoning was, we find as a matter of law that the evidence did or did not support both convictions.

### Conclusion

In sum, although the *evidence* supporting the facts necessary for the handgun conviction was included in the evidence necessary for the murder conviction, the issue, in my view, is whether the *facts* supporting these two crimes are distinct. It seems to me we cannot say that there is no reasonable possibility the jury based both of Guyton's convictions on the same set of facts. But it is easy to say that the gun did not appear magically in Guyton's hand at the instant of firing. Therefore, viewed de novo there was evidence supporting the facts essential to the murder conviction and also the fact that Guyton possessed a handgun whether or not he fired it. If so, the facts supporting the murder do not embrace all the facts supporting the handgun offense. Therefore, Guyton's convictions for murder and carrying a handgun without a license do not violate the Indiana Double Jeopardy Clause.