## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Sep 15 2015, 8:31 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

John C. Bohdan
Fort Wayne, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Larry D. Allen
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Larry Hayden, Jr.,

*Appellant-Defendant*,

v.

State of Indiana,

*Appellee-Plaintiff*.

September 15, 2015

Court of Appeals Case No. 02A03-1501-CR-9

Appeal from the Allen Superior Court

The Honorable John F. Surbeck, Jr., Judge

Trial Court Cause No. 02D06-1310-FB-205

**Brown, Judge.**

Larry Hayden, Jr., appeals his convictions and sentences for robbery as a class C felony, unlawful possession of a firearm by a serious violent felon as a class B felony, escape as a class C felony, intimidation as a class D felony, and two counts of resisting law enforcement as class A misdemeanors. Hayden raises one issue which we revise and restate as whether his convictions and sentences violate double jeopardy principles or the continuing crime doctrine. We affirm.

### *Facts and Procedural History*

On October 21, 2013, a confidential informant (the "C.I.") met with detectives regarding purchasing cocaine from Hayden in a controlled buy. A female officer searched the C.I. and placed a wire on her. The C.I. and Hayden made arrangements on the phone, but Hayden later called the C.I. and changed the location of the meeting. Fort Wayne Police Detective Shane Heath gave the C.I. $250 for the buy.

The C.I. drove to the meeting location in Allen County. Hayden entered the C.I.'s vehicle, sat in the passenger's seat, and pulled out a gun. The C.I. started "freaking out" and said: "[P]lease don't do this." Transcript at 141. Hayden told the C.I. to take the keys out of the ignition, to put them out of the window, and to give him all her money. The C.I. was "very scared" and gave Hayden all the money that the police had given her. *Id.* at 142. Hayden then wiped his fingerprints off the door handle and exited the car.

Meanwhile, Fort Wayne Police Detective Greg Stier was listening to the wire and heard normal conversation "[a]nd then all of a sudden the [C.I.] starting

begging for" her life. *Id.* at 227. One of the detectives asked uniform officers to come closer, then said that the C.I. was being robbed and "to go in for the rescue." *Id.* at 160. Fort Wayne Police Detective Michael Long arrived at the scene in a few seconds. Sergeant Mark Brooks and Detectives Heath and Ripley arrived quickly as well.

[5] Detective Long observed Hayden's right hand tucked in the inside of the left portion of his coat and "[t]he way that his hand was positioned [he] could kind of see a bulge, and it looked like he had a handgun." *Id.* at 161. Detective Long drew his handgun, ordered Hayden to show his hands, and Hayden went behind the back side of a van, stayed back there a couple of seconds, and then started to run. Detective Stier pursued Hayden in his vehicle. Sergeant Brooks also pursued Hayden in his vehicle and observed him enter a small wooded area but lost sight of him for a few moments. Sergeant Brooks eventually exited his vehicle when Hayden exited the wooded area. Detective Stier ordered Hayden to come out with his hands out. Sergeant Brooks drew his sidearm, pointed it at Hayden, advised Hayden that he was a police officer, and told him to "get down in a loud command voice, numerous times." *Id.* at 180.

[6] Hayden walked toward Sergeant Brooks while holding the money in his hand. Sergeant Brooks repeatedly ordered Hayden to "get down." *Id.* Hayden looked around, went down to his knees, leaned forward, and started to eat the money. Hayden also put his hands in front of him and then back underneath him, and Sergeant Brooks eventually placed Hayden in handcuffs.

[7] Sergeant Brooks turned Hayden over to Detective Heath and began to search for the weapon. Sergeant Brooks called the fire department to search the roof of a barn in a location where Hayden had run and eventually retrieved a firearm from the top of the barn.

[8] Meanwhile, Detective Mark Gerardot who was in full police uniform and driving a squad car transported Hayden to the hospital. After arriving at the hospital, Detective Gerardot opened the rear door of the car, and Hayden stepped out of the vehicle and "had somehow gotten one of the cuffs off his wrist and he fled, as soon as he got both feet on the ground, he took off running." *Id.* at 271. Detective Gerardot pursued Hayden on foot, provided details of the pursuit to dispatch, and yelled "stop police." *Id.* at 276. Hayden did not comply.

[9] Nicole Ferguson, who was then employed by Allen County Community Corrections and was wearing a full police uniform, observed Hayden running and said "stop, police," pointed her Taser at him, and again ordered him to stop. *Id.* at 289. Hayden told Ferguson that he had a gun and that he was going to shoot her, and Ferguson unsuccessfully deployed her Taser. Hayden continued to run and eventually opened the passenger door of a vehicle driven by a civilian, locked the doors, and yelled at the driver to drive. Detective Gerardot told the panicked driver to open the door, and she complied. Detective Gerardot then forcefully removed Hayden from the car and directed him to the ground where Hayden struggled with officers. The officers were eventually able to handcuff him.

[10] At some point, Hayden told Detective Heath that he agreed to meet with the C.I. to sell her cocaine but he had no intention of selling the cocaine and only wished to take the C.I.'s money, and that he did not have a gun.

[11] On October 21, 2013, the State charged Hayden with Count I, robbery as a class B felony; Count II, unlawful possession of a firearm by a serious violent felon as a class B felony; Count III, escape as a class C felony; Count IV, intimidation as a class D felony for his threat to Ferguson; Count V, resisting law enforcement as a class A misdemeanor for fleeing from Detective Gerardot; and Count VI, resisting law enforcement as a class A misdemeanor for forcibly resisting, obstructing, or interfering with Detective Gerardot.[1]

[12] The jury found Hayden guilty of Counts I, III, IV, V, and VI. The court then proceeded to the next phase of the trial regarding Count II, unlawful possession of a firearm by a serious violent felon as a class B felony. Hayden stipulated that he had a qualifying prior conviction but argued that he did not possess the firearm. The jury found him guilty of Count II.

[13] On December 19, 2014, the court entered judgments of conviction and ordered Hayden to serve six years for Count I, robbery as a class C felony, fifteen years for Count II, unlawful possession of a firearm by a serious violent felon as a class B felony, six years for Count III, escape as a class C felony, two years for

---

[1] The State also charged Hayden with Count VII, possession of paraphernalia as a class A misdemeanor, which was later dismissed.

Count IV, intimidation as a class D felony, and one year each for Counts V and VI, resisting law enforcement as class A misdemeanors. The court ordered that the sentences for Counts I, II, III, and IV be served consecutive to each other and that Counts V and VI be served concurrent with each other and concurrent with Counts I, II, III, and IV. Thus, Hayden received an aggregate sentence of twenty-nine years.

[14] On January 28, 2015, the court entered an order finding that there were double jeopardy issues in Count I, robbery as a class B felony as charged and Count II, possession of a firearm by a serious violent felon, due to the fact that the weapon used to enhance Count I from a class C felony to a class B felony was the same weapon which formed the basis of Count II, possession of a firearm by a serious violent felon. The court then entered judgment of conviction on Count I, robbery, as a class C felony.

## *Analysis*

[15] The issue is whether Hayden's convictions and sentences violate double jeopardy principles or the continuing crime doctrine.[2]

---

[2] Hayden also argues that the sentences for Counts I and II are disproportionate to the crime charged, but does not cite to authority or develop this argument. Consequently, this issue is waived. *See Cooper v. State*, 854 N.E.2d 831, 834 n.1 (Ind. 2006) (holding that the defendant's contention was waived because it was "supported neither by cogent argument nor citation to authority"); *Shane v. State*, 716 N.E.2d 391, 398 n.3 (Ind. 1999) (holding that the defendant waived argument on appeal by failing to develop a cogent argument).

A. *Double Jeopardy under the Statutory and Actual Evidence Tests*

Hayden argues that the trial court's reduction of Count I from robbery as a class B felony to robbery as a class C felony failed to remedy the double jeopardy violation because his knowing and intentional possession of a firearm was an element the State needed to prove in order to convict him of armed robbery, and that these two convictions fail the statutory elements test as outlined in *Richardson v. State*, 717 N.E.2d 32 (Ind. 1999). He also asserts that the same evidence was used to prove the essential elements of Counts I and II, and that there is more than a reasonable possibility that the same evidentiary facts were used by the jury to convict him of both those Counts. He contends that the State employed evidence of the possession of a firearm to prove the requisite elements of a robbery. The State argues that the convictions for Counts I and II do not violate the statutory elements test or the actual evidence test.

The Indiana Constitution provides that "[n]o person shall be put in jeopardy twice for the same offense." IND. CONST. art. 1, § 14. "Indiana's Double Jeopardy Clause . . . prevent[s] the State from being able to proceed against a person twice for the same criminal transgression." *Hopkins v. State*, 759 N.E.2d 633, 639 (Ind. 2001) (quoting *Richardson*, 717 N.E.2d at 49). The Indiana Supreme Court has held that "two or more offenses are the 'same offense' in violation of Article I, Section 14 of the Indiana Constitution, if, with respect to *either* the statutory elements of the challenged crimes *or* the actual evidence used to convict, the essential elements of one challenged offense also establish the essential elements of another challenged offense." *Richardson*, 717 N.E.2d at

49. "On appeal, the defendant bears the burden to show that his convictions violated his constitutional right to be free from double jeopardy." *Boyd v. State*, 766 N.E.2d 396, 400 (Ind. Ct. App. 2002) (citing *Lutes v. State*, 272 Ind. 699, 401 N.E.2d 671, 672-673 (1980)).

[18] In addition, Indiana courts "have long adhered to a series of rules of statutory construction and common law that are often described as double jeopardy, but are not governed by the constitutional test set forth in *Richardson*." *Guyton v. State*, 771 N.E.2d 1141, 1143 (Ind. 2002) (quoting *Pierce v. State*, 761 N.E.2d 826, 830 (Ind. 2002) (citing *Richardson*, 717 N.E.2d at 55 (Sullivan, J., concurring))). "Even where no constitutional violation has occurred, multiple convictions may nevertheless violate the 'rules of statutory construction and common law that are often described as double jeopardy, but are not governed by the constitutional test set forth in *Richardson*.'" *Vandergriff v. State*, 812 N.E.2d 1084, 1088 (Ind. Ct. App. 2004) (quoting *Pierce*, 761 N.E.2d at 830), *trans. denied*. As enumerated in Justice Sullivan's concurrence in *Richardson* and endorsed by the Indiana Supreme Court in *Guyton*, five additional categories of double jeopardy exist: (1) conviction and punishment for a crime which is a lesser-included offense of another crime for which the defendant has been convicted and punished; (2) conviction and punishment for a crime which consists of the very same act as another crime for which the defendant has been convicted and punished; (3) conviction and punishment for a crime which consists of the very same act as an element of another crime for which the defendant has been convicted and punished; (4) conviction and punishment for

an enhancement of a crime where the enhancement is imposed for the very same behavior or harm as another crime for which the defendant has been convicted and punished; and (5) conviction and punishment for the crime of conspiracy where the overt act that constitutes an element of the conspiracy charge is the very same act as another crime for which the defendant has been convicted and punished. *See Guyton*, 771 N.E.2d at 1143; *Richardson*, 717 N.E.2d at 55-56 (Sullivan, J., concurring).

[19] To the extent that Hayden argues that his convictions for Count I, robbery as a class C felony, and Count II, unlawful possession of a firearm by a serious violent felon, violate the statutory elements test, we observe that the objective of the statutory elements test is to determine whether the essential elements of separate statutory crimes charged could be established hypothetically. *Richardson*, 717 N.E.2d at 50. The charged offenses are identified by comparing the essential statutory elements of one charged offense with the essential statutory elements of the other charged offense. *Id.*

> Inspecting the relevant statutes and the charging instrument to identify those elements which must be established to convict under the statute, this review considers the essential statutory elements to determine the identity of the offense charged, but does not evaluate the manner or means by which the offenses are alleged to have been committed, unless the manner or means comprise an essential element.

*Id.* "[I]dentity tests depend upon the evidence *required* [under the statute] to convict, not the evidence actually introduced at trial." *Id.* at 50 n.39 (quoting Larry Simon, Note, *Twice in Jeopardy*, 75 Yale L.J. 262, 273 (1965)).

[20] Ind. Code § 35-42-5-1 governs robbery as a class C felony and at the time of the offense provided that "[a] person who knowingly or intentionally takes property from another person or from the presence of another person: (1) by using or threatening the use of force on any person; or (2) by putting any person in fear; commits robbery, a Class C felony."[3] Ind. Code § 35-47-4-5 governs unlawful possession of a firearm by a serious violent felon and at the time of the offense provided in part that "[a] serious violent felon who knowingly or intentionally possesses a firearm commits unlawful possession of a firearm by a serious violent felon, a Class B felony."[4] Robbery contains the element of taking property, which is not an element of unlawful possession of a firearm by a serious violent felon. Possession of a firearm by a serious violent felon requires a showing that the person is a serious violent felon which is not an element of robbery. The convictions do not violate the statutory elements test.

[21] We turn to whether Hayden's convictions for Counts I and II violate the actual evidence test. In order to find a double jeopardy violation under the actual evidence test, a defendant must demonstrate and a reviewing court must

---

[3] Subsequently amended by Pub. L. No. 158-2013, § 450 (eff. July 1, 2014).

[4] Subsequently amended by Pub. L. No. 158-2013, § 590 (eff. July 1, 2014); Pub. L. No. 214-2013, § 40 (eff. July 1, 2014); Pub. L. No. 168-2014, § 88 (eff. July 1, 2014).

conclude that there is a reasonable possibility that the evidentiary facts used by the factfinder to establish the essential elements of an offense for which the defendant was convicted or acquitted may also have been used to establish all the essential elements of a second challenged offense. *Hines v. State*, 30 N.E.3d 1216, 1222 (Ind. 2015); *Vestal v. State*, 773 N.E.2d 805, 806 (Ind. 2002), *reh'g denied*. "Application of this test requires the court to 'identify the essential elements of each of the challenged crimes and to evaluate the evidence from the jury's perspective . . . .'" *Hines*, 30 N.E.3d at 1222 (quoting *Lee v. State*, 892 N.E.2d 1231, 1234 (Ind. 2008) (quoting *Spivey v. State*, 761 N.E.2d 831, 832 (Ind. 2002))). "In determining the facts used by the fact-finder, 'it is appropriate to consider the charging information, jury instructions, [ ] arguments of counsel' and other factors that may have guided the jury's determination." *Id.* (quoting *Lee*, 892 N.E.2d at 1234 (citing *Spivey*, 761 N.E.2d at 832 and *Richardson*, 717 N.E.2d at 54 n.48)).

[22]   We note that Hayden's Appendix and the transcript do not contain a copy of the jury instructions.[5] The charging information for Count I, robbery as a class B felony, alleged that Hayden "while armed with a deadly weapon, to wit: a firearm, knowingly or intentionally [took] property, to wit: United States currency; from the person or presence of another person, to wit: CI 1921, by using or threatening the use of force, or by putting said CI 1921 in fear . . . ."

---

[5] The transcript merely states: "ACCORDING TO LAW, PRELIMINARY JURY INSTRUCTIONS ARE READ TO THE JURY BY THE COURT" and "ACCORDING TO LAW, THE COURT READ THE BALANCE OF THE FINAL INSTRUCTIONS TO THE COURT." Transcript at 123-124, 385.

Appellant's Appendix at 18. The charging information for Count II alleged that Hayden, "a serious violent felon, did knowingly or intentionally possess a firearm . . . ." *Id.* at 19. The record reveals that Hayden entered the C.I.'s vehicle with the gun, exited the vehicle with the gun, and later threw the gun on top of the barn. Based upon the record, we cannot say that Hayden has demonstrated a reasonable possibility that the evidentiary facts used by the factfinder to establish the essential elements of robbery may also have been used to establish all the essential elements of possession of a firearm by a serious violent felon. *See Guyton*, 771 N.E.2d at 1142-1143 (observing that the defendant claimed his convictions for murder and carrying a handgun without a license violated the Double Jeopardy provisions of the Indiana Constitution and cited *Richardson*, and holding that carrying a gun along the street was one crime and using it was another); *Guyton*, 771 N.E.2d at 1145-1146 (Dickson, J., concurring in result) (observing that the State demonstrated that the defendant caused a death by shooting the victim and also showed that the defendant possessed the gun before and after the shooting and that it was not reasonably possible that the jury ignored this evidence and based its finding of guilt for the handgun offense solely on the defendant's possession of the weapon at the time he fired it); *Thy Ho v. State*, 725 N.E.2d 988, 992-993 (Ind. Ct. App. 2000) (holding that distinct evidentiary facts were used to prove that the defendant committed robbery while armed with a handgun while a lack of evidentiary facts were used to prove that the defendant did not have a license to carry that handgun and that the defendant's convictions were not the same offense under Indiana's Double Jeopardy Clause).

[23] Moreover, the trial court reduced the conviction for Count I, robbery, from a class B felony to a class C felony due to the fact that the weapon used to enhance Count I from a class C felony to a class B felony was the same weapon which formed the basis of Count II, possession of a firearm by a serious violent felon. This reduction removed the requirement that the robbery was committed while armed with a deadly weapon. *See* Ind. Code § 35-42-5-1 (2004) (providing that robbery is a class B felony if it is committed while armed with a deadly weapon). Even assuming that a double jeopardy concern existed under the actual evidence test, any concern was removed by the reduction of Count I from robbery as a class B felony to a class C felony.[6] *See Spears v. State*, 735 N.E.2d 1161, 1166 (Ind. 2000) (holding that the remedy for double jeopardy violations has routinely been to reduce or vacate one of the convictions), *reh'g denied*.

[24] Hayden also argues that mere possession of a firearm or being armed with a deadly weapon is not enough to impose multiple punishments and cites *Nicoson v. State*, 938 N.E.2d 660 (Ind. 2010); and *Cross v. State*, 15 N.E.3d 569 (Ind. 2014). In *Nicoson*, the defendant argued that he was placed in double jeopardy because the mere use of a firearm not only subjected him to the higher

---

[6] We note that Hayden focuses his double jeopardy argument on Counts I and II. He does not allege that his convictions for Count III, escape, which merely alleged that Hayden fled from lawful detention, and Count V, resisting law enforcement as a class A misdemeanor for fleeing from Detective Gerardot violate double jeopardy principles. As noted, the record does not include the jury instructions. We cannot say that Hayden has argued or demonstrated that Counts III and V both relate to his act of running from Detective Gerardot or that he has met his burden of demonstrating double jeopardy with respect to these counts.

sentencing range imposed for class B felonies but also subjected him to an additional enhancement under Ind. Code § 35-50-2-11, which provided that the State could seek to have a person who allegedly committed a certain offense sentenced to an additional fixed term of imprisonment if the State could show that the person knowingly or intentionally used a firearm in the commission of the offense. 938 N.E.2d at 662-664. The Court stated that mere possession of a firearm or being armed with a deadly weapon was not enough under the statute. *Id.* at 665. In *Cross*, the defendant argued that the post-conviction court violated Indiana double jeopardy principles by entering convictions and imposing sentences for both carrying a handgun without a permit and an enhancement of a dealing conviction based on possessing the same handgun. 15 N.E.3d at 571. The Court cited *Nicoson* and vacated the defendant's sentence imposed under the handgun enhancement charge. *Id.* at 573. Unlike *Nicoson* and *Cross*, the trial court reduced the conviction from a class B felony to a class C felony due to the fact that the weapon used to enhance Count I from a class C felony to a class B felony was the same weapon which formed the basis of Count II, possession of a firearm by a serious violent felon. We cannot say that *Nicoson* or *Cross* require reversal.

B. *Continuous Crime Doctrine*

[25] The Indiana Supreme Court recently clarified the application of the continuous crime doctrine. In *Hines v. State*, the Court disagreed with *Buchanan v. State*, 913 N.E.2d 712 (Ind. Ct. App. 2009), *trans. denied*, to the extent it stood for the proposition that the continuous crime doctrine may be judicially extended to

two distinct criminal offenses. 30 N.E.3d at 1220. The Court held that the continuous crime doctrine is a rule of statutory construction and common law limited to situations where a defendant has been charged multiple times with the same offense. *Id.* at 1219. The Court held that it "applies only where a defendant has been charged multiple times with the same 'continuous' offense." *Id.* at 1220. The Court also held that the doctrine did not apply to the facts of that case because the defendant was convicted of criminal confinement as a class C felony and battery as a class D felony, and he was not convicted of multiple charges of criminal confinement, nor multiple charges of battery. *Id.* at 1220-1221. The Court also observed that battery was not a crime for which all of the elements necessary to impose criminal liability were also elements found in criminal confinement or vice versa. *Id.* at 1221. The Court concluded that criminal confinement and battery were two distinct chargeable crimes to which the continuous crime doctrine did not apply. *Id.*

[26] Hayden asserts that the trial court's order that some of his sentences be served consecutive to each other violates the continuous crime doctrine. He concludes by requesting that his sentences for Counts I and II be served concurrent with each other and that the sentences for Counts III through VI be served concurrent with each other. He does not cite authority that the continuous crime doctrine addresses whether sentences should be served consecutively.

[27] He contends that "[i]mposition of consecutive sentences in Counts I and II is also violative of double jeopardy principles in that the charged robbery and the charged firearm possession were demonstrably part of a single episode of

criminal conduct." As to whether Counts I and II were part of a single episode of criminal conduct, we observe that the continuous crime doctrine is distinct from the concept of an "episode of criminal conduct," which applies under Ind. Code § 35-50-1-2 to limit the aggregate term of consecutive sentences when the convictions are not for crimes of violence and the "offenses or a connected series of offenses . . . are closely related in time, place, and circumstance." *See Seal v. State*, (filed July 15, 2015), Ind. App. No. 48A02-1410-CR-775, slip op. at 11 n.3, *trans. pending*. Hayden does not cite Ind. Code § 35-50-1-2, and we cannot say that the consecutive sentences of six years for Count I, robbery as a class C felony, and fifteen years for Count II, unlawful possession of a firearm by a serious violent felon as a class B felony, violate Ind. Code § 35-50-1-2. *See* Ind. Code § 35-50-1-2 (providing that "except for crimes of violence, the total of the consecutive terms of imprisonment, exclusive of terms of imprisonment under IC 35-50-2-8 and IC 35-50-2-10, to which the defendant is sentenced for felony convictions arising out of an episode of criminal conduct shall not exceed the advisory sentence for a felony which is one (1) class of felony higher than the most serious of the felonies for which the person has been convicted"); Ind. Code § 35-50-2-4 (providing that the advisory sentence for a class A felony is thirty years).

[28] To the extent that Hayden raises the continuous crime doctrine to challenge his convictions, we will address his arguments. With respect to Counts I and II, Hayden was not convicted of multiple charges of robbery, nor multiple charges of unlawful possession of a firearm by a serious violent felon. Robbery is not a

crime for which all of the elements necessary to impose criminal liability are also elements found in unlawful possession of a firearm by a serious violent felon or vice versa. Accordingly, we conclude that robbery and unlawful possession of a firearm by a serious violent felon are two distinct chargeable crimes to which the continuous crime doctrine does not apply. *See Hines*, 30 N.E.3d at 1221.

[29] Hayden also argues that the continuous crime doctrine applies to Count III, escape as a class C felony, Count IV, intimidation as a class D felony, Count V, resisting law enforcement as a class A misdemeanor, and Count VI, resisting law enforcement as a class A misdemeanor. We note that Hayden was not convicted of multiple charges of escape or intimidation, and he does not develop an argument that the elements necessary to impose criminal liability for escape, intimidation, or resisting law enforcement are the elements found in another charge. Thus, we cannot say that the continuous crime doctrine applies to the convictions for escape or intimidation.

[30] To the extent that Hayden was convicted of two counts of resisting law enforcement as a class A misdemeanor, in *Armstead v. State*, 549 N.E.2d 400, 401 (Ind. Ct. App. 1990), we noted that the offense of resisting law enforcement does not constitute a crime against the person. We further noted that the offense is an interference with governmental operations constituting an offense against public administration. 549 N.E.2d at 401. We stated that a person who commits such an offense "harms the peace and dignity of the State of Indiana and its law enforcement authority." *Id.* We held, therefore, that the "harm

caused by one incident is the same regardless of the number of police officers resisted. It is the act of resisting duly constituted authority which the statute prohibits, not resisting individual representatives of that authority." *Id.* We noted that multiple violations of the statute occur when "more than one incident occurs." *Id.* at 402.

[31] Count V alleged that Hayden "did knowingly or intentionally flee from" Detective Gerardot after Detective Gerardot ordered him to stop. Appellant's Appendix at 22. Count VI alleged that Hayden "did knowingly or intentionally forcibly resist, obstruct or interfere with" Detective Gerardot. *Id.* at 23. The record reveals that Detective Gerardot transported Hayden to the hospital and opened the rear door of his vehicle when Hayden "took off running" and did not comply with Detective Gerardot's order to stop. Transcript at 271. At a later time in the pursuit and another place, Detective Gerardot forcefully removed Hayden from a woman's car and Hayden struggled with officers. Under the circumstances, we cannot say that the continuous crime doctrine precludes the imposition of two convictions of resisting law enforcement as class A misdemeanors because he was not charged with the same continuous offense. *See Williams v. State*, 755 N.E.2d 1183, 1186 (Ind. Ct. App. 2001) (holding that the defendant perpetrated two separate offenses of resisting law enforcement and the trial court properly entered convictions for both counts where the defendant fled from officers after being commanded to stop and also forcibly resisted those officers when they caught up with him and inflicted bodily injury upon them); *see also Arthur v. State*, 824 N.E.2d 383, 386 (Ind. Ct.

App. 2005) (recognizing that "resisting law enforcement by fleeing is a different 'species' from resisting law enforcement by force"), *trans. denied*, *disapproved on other grounds by Brock v. State*, 955 N.E.2d 195 (Ind. 2011), *cert. denied*, 132 S. Ct. 1801 (2012).

## *Conclusion*

[32] For the foregoing reasons, we affirm Hayden's convictions and sentence.

[33] Affirmed.

Riley, J., and Altice, J., concur.