David A. CALVERT, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 40A05–0911–CR–659.

Court of Appeals of Indiana.

July 27, 2010.

---

R. Patrick Magrath, Alcorn Goering & Sage, LLP, Madison, IN, Attorney for Appellant.

Gregory F. Zoeller, Attorney General of Indiana, Ann L. Goodwin, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

ROBB, Judge.

### Case Summary and Issues

Following a jury trial, David Calvert was convicted of attempted robbery with a deadly weapon and possession of a firearm as a serious violent felon, both Class B felonies, and possession of a sawed-off shotgun, a Class D felony. The trial court entered judgment and imposed sentence

on all three convictions, with concurrent sentences of fifteen years with three years suspended on the Class B felony convictions. Calvert now appeals, raising the following restated issues: 1) whether sufficient evidence supports his convictions; 2) whether Calvert's dual convictions of possessing a firearm as a serious violent felon and possessing a sawed-off shotgun violate double jeopardy; and 3) whether Calvert's sentence is inappropriate in light of the nature of the offenses and his character. We conclude the evidence is insufficient to support Calvert's conviction of attempted robbery because the State failed to prove a substantial step; sufficient evidence supports Calvert's conviction of possessing a firearm as a serious violent felon; Calvert's conviction of possessing a sawed-off shotgun violates double jeopardy; and Calvert's sentence is not inappropriate. We therefore affirm in part, reverse in part, and remand with instructions.

*Facts and Procedural History*

In the evening of July 26, 2007, Calvert was driving a Jeep in which his wife Tina Jewell, Joseph Cole, and seventeen-year-old J.F. were passengers. Earlier in the evening Calvert and Jewell had picked up Cole and J.F. before driving to North Vernon. Calvert was acquainted with Cole and J.F., and J.F. had previously told Calvert about one or more robberies he had attempted or completed. According to Cole's statement to police officers, after Calvert picked up Cole and J.F., J.F. said he was going to rob a liquor store by running in, demanding money, and running back out.

Calvert was driving the Jeep southbound along State Road 7 in North Vernon when he turned the Jeep into the south side parking lot of the House of Spirits liquor store. Officer Staples of the North Vernon Police Department took notice of the Jeep because he had been assigned to specially patrol the city's liquor stores, the police department having been informed by another law enforcement agency that there were heightened grounds to suspect liquor store robberies. Officer Staples observed the Jeep circle the liquor store by turning into an alley behind the store, driving back to the north side parking lot, and finally turning north on State Road 7. Officer Staples then drove his police car out of the parking lot of American Rental, a business closed at the time and on the opposite side of the road from the liquor store, and turned to follow the Jeep.

Calvert turned the Jeep into the parking lot of American Rental and stopped it near where Officer Staples had initially been parked. Officer Staples parked his car behind the Jeep, stepped out, and spoke briefly with Calvert, who was still sitting in the Jeep's driver's seat and told Officer Staples he was "just hanging out." Transcript at 153. When other officers arrived to assist, they removed Calvert and his three passengers from the Jeep. Calvert was cooperative while one of the officers frisked his person for weapons and found none. With all the doors of the Jeep open, Officer Keith Messer saw a sawed-off shotgun lying on the floor, partially under the front passenger seat but protruding enough toward the rear seat that its handle and trigger guard were plainly visible. Officer Messer also observed what looked like a handgun, but was actually a BB pistol, lying in "plain view" on the back seat. *Id.* at 177. An orange ski mask was also visible in the Jeep. Subsequent searches of the Jeep uncovered another BB pistol, three pairs of sunglasses, and two more orange ski masks.

Calvert, Cole, and J.F. were arrested and interviewed at the police station. Calvert claimed that at the time Officer Staples stopped behind the Jeep, he was getting ready to drop J.F. and Cole off at

American Rental but had "no clue" what they were going to do there. *Id.* at 370. When asked about the guns in the Jeep and who they belonged to, Calvert answered:

> [Calvert]: [J.F.]. He stole two of them pistols from Wal–Mart and the other one he bought.
>
> [Detective]: Which one did he buy?
>
> [Calvert]: The 12–gauge.[1]

*Id.* J.F., when interviewed separately, told the detective that the sawed-off shotgun belonged to Calvert.

The State charged Calvert with Count I, attempted robbery as a Class B felony; Count II, possession of a firearm by a serious violent felon as a Class B felony; and Count III, possession of a sawed-off shotgun as a Class D felony. The case was tried to a jury, which found Calvert guilty as charged. The trial court held a sentencing hearing and in its sentencing order found:

> the following aggravating factors: [Calvert] has no high school diploma or GED certificate; [Calvert] has had two (2) formal delinquency adjudications, three (3) prior felony convictions and one (1) successful probation revocation. The Court finds the following mitigating factors: [Calvert]'s young age; incarceration would be a hardship on his dependents; the crime (in part) was caused by chronic substance abuse by [Calvert] since the age of twelve (12); and [Calvert] himself had been the victim of a sex crime at age eleven (11). The Court in weighing the aggravating factors and the mitigating factors, finds the aggravating factors slightly outweigh the mitigating factors and justify the imposition of a sentence in excess of the advisory sentence[.]

Appellant's Appendix at 220. The trial court imposed the following concurrent sentences: fifteen years on Count I, with twelve years executed and three years suspended to probation; fifteen years on Count II, with twelve years executed and three years suspended to probation; and two years, suspended, on Count III. Calvert now appeals.

### Discussion and Decision

### I. Sufficiency of the Evidence

#### A. Standard of Review

■ When reviewing the sufficiency of the evidence to support a conviction, we consider only the probative evidence and reasonable inferences supporting the verdict. *Drane v. State,* 867 N.E.2d 144, 146 (Ind.2007). We neither reweigh the evidence nor assess the credibility of witnesses. *Id.* If there is probative evidence from which a reasonable trier of fact could find the elements of the crime proven beyond a reasonable doubt, we must affirm. *Id.* "Where the evidence of guilt is essentially circumstantial, the question for the reviewing court is whether reasonable minds could reach the inferences drawn by the jury; if so, there is sufficient evidence." *Whitney v. State,* 726 N.E.2d 823, 825 (Ind.Ct.App.2000) (quotation omitted).

#### B. Attempted Robbery

■ Calvert argues the evidence is insufficient to sustain his conviction of attempted robbery. To convict Calvert of attempted robbery as a Class B felony, the State must prove beyond a reasonable doubt that Calvert, either directly or as an accomplice, engaged in conduct that consti-

---

1. The transcript spells this word "guage," tr. at 370, but we infer the misspelling is a typographical error.

tuted a substantial step toward the knowing or intentional taking of property from the liquor store, by using or threatening force or placing a person in fear, and while armed with a deadly weapon. *Stokes v. State,* 922 N.E.2d 758, 763–64 (Ind.Ct.App. 2010), *trans. denied; see* Ind.Code § 35–41–2–4 (aiding an offense); Ind.Code § 35–41–5–1(a) (attempt); Ind.Code § 35–42–5–1 (robbery). The State argued at trial that Calvert aided J.F. in taking a substantial step toward robbing the liquor store.[2] Calvert contends the evidence is insufficient to prove a substantial step, either by him directly or as an accomplice of J.F. For the reasons stated below, we agree.

 "The substantial step element of attempt requires proof of any overt act beyond mere preparation and in furtherance of the intent to commit the crime." *Jackson v. State,* 683 N.E.2d 560, 566 (Ind. 1997). "This requirement has been described as a minimal one,' *State v. Van Cleave,* 674 N.E.2d 1293, 1304 (Ind.1996), *reh'g denied,* but the conduct must strongly corroborate the defendant's criminal intent." *Id.* A reviewing court's analysis "focuses on what has occurred and not what remains to be done." *Id.* Whether a defendant's actions constitute a substantial step is generally a question for the trier of fact based on the totality of circumstances, and it "is impossible to lay down any general rule to determine what acts are too remote to constitute an attempt." *Collier v. State,* 846 N.E.2d 340, 344, 345–46 (Ind. Ct.App.2006) (quotation omitted), *trans. denied.* Nonetheless, in some cases the defendant's conduct will fall short of a substantial step as a matter of law. *See id.* at 350.

In *Collier,* this court held the defendant's actions did not constitute a substan-

tial step toward the murder of his estranged wife. Three times on the day of the incident, Collier told a neighbor that he was going to kill his wife and himself. Later that night, he drove to his wife's workplace while she was there, had in his car an ice pick and a box cutter, and parked in a lot with a view of the building's only after-hours exit. However, when police officers later found Collier inside his car, he was asleep or passed out. This court reasoned that despite Collier's lying in wait, reconnoitering, and possessing materials to be used in the crime, his conduct as a whole was not "*strongly* corroborative of his stated intent," *id.* at 348 (emphasis original), because he thereafter ceased to be awake or alert and never came close enough to his wife to place her in imminent physical danger, *id.* at 349–50. In *Hampton v. State,* 468 N.E.2d 1077 (Ind. Ct.App.1984), this court affirmed a conviction for attempted robbery of a restaurant. The defendant parked his car next to a busy highway, a potential easy escape route; he walked up to the restaurant and hid between bushes and the restaurant building in an effort to avoid car lights; and when found by police he was lying face down between bushes and the building, carrying a pistol and wearing a ski mask. Additionally, the defendant was a former employee of the restaurant, admitted his plan to rob that restaurant, and knew its assistant manager would be departing that night with a large amount of cash. *Id.* at 1079, 1081.

 Applying *Collier* and *Hampton* to the facts of this case, we conclude Calvert's actions, including as an accomplice through J.F., were at most mere preparation to rob the liquor store. The facts favorable to the judgment indicate J.F.

**2.** *See* Appellant's App. at 41 (alleging Calvert "knowingly or intentionally aided [J.F.] in attempting to take property from … House of Spirits").

told Calvert of his intent to rob a liquor store, and Calvert and J.F. drove to the liquor store with materials for committing a robbery: BB guns, a sawed-off shotgun, ski masks, and sunglasses. However, as *Collier* illustrates, merely driving to a location contemplated for a crime while possessing materials for use in the crime is not necessarily sufficient for a substantial step. *See also State v. Kemp*, 753 N.E.2d 47, 48, 51 (Ind.Ct.App.2001) (holding no substantial step to child molesting was sufficiently alleged by allegations defendant agreed to meet purported minor girl for sex, drove to restaurant parking lot near motel, and brought condoms with him), *trans. denied, superseded by statute on other grounds as stated in Aplin v. State*, 889 N.E.2d 882, 885 n. 5 (Ind.Ct.App.2008), *trans. denied.*

In *Hampton*, this court cited additional circumstances corroborating the defendant's continuing intent to commit a robbery: the defendant approached on foot to just outside the building, he actively sought to conceal himself, and he was apprehended immediately outside the building while wearing a ski mask and holding a pistol. *Hampton*, 468 N.E.2d at 1081. Such circumstances are not present here, where Calvert and J.F. never left their vehicle or walked up to the liquor store, the vehicle was plainly visible from the highway with no evidence of attempts at concealment, and after circling the liquor store Calvert drove to a different parking lot across the highway before Officer Staples made contact with him.

We are mindful that the question of what actions constitute a substantial step is generally one for the trier of fact and that Indiana courts eschew laying down general rules in the matter. Yet it is also well settled a substantial step must go beyond mere preparation or planning to commit an offense; "[w]ere we to conclude otherwise, there would be no limit on the reach of attempt' crimes." *Kemp*, 753 N.E.2d at 51. Further, we note that *Hampton*, though cited with approval, has been regarded by our supreme court as "flimsier" than the typical case of attempted robbery and as illustrating a minimal "threshold" for the offense. *Van Cleave*, 674 N.E.2d at 1304. We therefore conclude Calvert's and J.F.'s actions, which constitute an appreciably less substantial step than *Hampton* illustrates, are insufficient to sustain a verdict of attempted robbery. We therefore reverse Calvert's attempted robbery conviction.

### C. Possession of Firearm as Serious Violent Felon

■ Calvert next argues the evidence is insufficient to sustain his conviction of possession of a firearm by a serious violent felon. Because Calvert stipulated to his status as a serious violent felon, this issue turns solely on the question of possession, which the State must prove was knowing or intentional. *See* Ind.Code § 35–47–4–5(c) ("A serious violent felon who knowingly or intentionally possesses a firearm commits unlawful possession of a firearm by a serious violent felon, a Class B felony."). The State alleges Calvert knowingly or intentionally possessed a "Trooper Model 158 sawed-off shotgun." Appellant's App. at 42.[3]

■ A conviction for possession of a firearm may rest upon either actual or constructive possession. *Henderson v. State*, 715 N.E.2d 833, 835 (Ind.1999). To establish constructive possession, the State must prove the defendant had both the

---

**3.** The BB guns found in the Jeep could not support a charge of unlawful firearm possession, because BB guns, although they may be deadly weapons, are not firearms. *See Merriweather v. State*, 778 N.E.2d 449, 457 (Ind.Ct. App.2002).

capability and the intent to maintain dominion and control over the contraband. *Hardister v. State,* 849 N.E.2d 563, 573 (Ind.2006). The capability requirement is met when the State shows the defendant was able to reduce the contraband to his personal possession. *Goliday v. State,* 708 N.E.2d 4, 6 (Ind.1999). To prove the intent requirement, the State must show the defendant had knowledge of the contraband's presence. *Id.* Knowledge may be inferred from the defendant's exclusive dominion and control over the premises containing the contraband, or from additional circumstances tending to show the defendant's knowledge of the presence of the contraband. *Id.* Such circumstances include: 1) incriminating statements by the defendant; 2) attempted flight or furtive gestures; 3) location of substances like drugs in settings that suggest manufacturing; 4) proximity of the contraband to the defendant; 5) contraband within the defendant's plain view; and 6) mingling of the contraband with items owned by the defendant. *Henderson,* 715 N.E.2d at 836.

■ Here, the evidence supports a reasonable inference Calvert constructively possessed the shotgun. Because Calvert was the Jeep's driver and the shotgun was found inside the passenger compartment, Calvert had the capability to reduce the shotgun to his personal possession. Although Calvert did not have exclusive possession of the Jeep due to there being three passengers, two other circumstances support an inference he knew of the shotgun's presence. First, part of the shotgun was sticking out from underneath the front passenger seat and was plainly visible to Officer Messer when he looked inside the Jeep through the rear passenger door. The jury therefore could have inferred that if Calvert, as the driver, did no more than look behind the front passenger seat, he would have seen the shotgun was there.

Second, Calvert made an incriminating statement about the shotgun when interviewed following his arrest. When asked about the guns in the Jeep and who they belonged to, Calvert stated the "12–gauge" belonged to J.F. Tr. at 370. The jury could reasonably have understood this statement to imply Calvert knew the shotgun was in the Jeep, otherwise he would not have attempted to explain its presence by stating J.F. was its owner. Further, the jury could have believed J.F.'s statement to police that Calvert owned the shotgun.

Calvert points to contrary evidence, specifically, trial testimony by Cole and J.F. that Calvert did not own the shotgun and they were trying to hide it from him. Calvert's argument in this regard is an invitation to reweigh the evidence, which we may not do. *Drane,* 867 N.E.2d at 146. Calvert also points to the fact that, in a separate proceeding, Cole pled guilty to possession of the shotgun. However, Calvert cites no authority, and we are aware of none, for the proposition that a firearm cannot be jointly possessed by two or more people. We therefore affirm Calvert's conviction of possessing a firearm as a serious violent felon.

## II. Double Jeopardy

■ Next, Calvert argues his dual convictions of possessing a firearm as a serious violent felon and possessing a sawed-off shotgun violate principles of double ·jeopardy. Conviction of two or more offenses violates the double jeopardy clause of the Indiana Constitution "if, with respect to *either* the statutory elements of the challenged crimes *or* the actual evidence used to convict, the essential elements of one challenged offense also establish the essential elements of another challenged offense." *Richardson v. State,* 717 N.E.2d 32, 49 (Ind.1999) (emphasis original). In addition to constitutional

double jeopardy, other categories of double jeopardy based on statutory construction and common law prohibit multiple convictions or punishments for the same crime. *Guyton v. State*, 771 N.E.2d 1141, 1143 (Ind.2002). As relevant to the present case, these categories bar "[c]onviction and punishment for a crime which consists of the very same act as another crime for which the defendant has been convicted and punished," as well as "[c]onviction and punishment for a crime which consists of the very same act as an element of another crime for which the defendant has been convicted and punished." *Id.* (quoting *Richardson*, 717 N.E.2d at 56 (Sullivan, J., concurring)).

In *Alexander v. State*, 768 N.E.2d 971 (Ind.Ct.App.2002), *aff'd on reh'g*, 772 N.E.2d 476, *trans. denied*, this court held the defendant's dual convictions of possessing a firearm as a serious violent felon and carrying a handgun without a license amounted to double jeopardy. Where the trial court relied on a single handgun and a single episode of possession to support both convictions, we concluded "the evidentiary facts used to establish an essential element of [Alexander's] conviction for unlawful possession of a firearm by a serious violent felon, i.e. that he constructively possessed a firearm, were also used to establish that he possessed a handgun without a license." *Id.* at 978. In *Jarrell v. State*, 818 N.E.2d 88 (Ind.Ct.App.2004), *trans. denied*, this court similarly concluded that where the defendant constructively possessed a single handgun found lying in his vehicle, that same evidence "was used to prove both an essential element of the unlawful possession of a firearm by a serious violent felon ... and all of the essential elements of carrying a handgun without a license." *Id.* at 93. As such, the convictions amounted to double jeopardy. *Id.*

Here, as the State acknowledges, Calvert's convictions for possessing a firearm as a serious violent felon and possessing a sawed-off shotgun were established by proof of one and the same act: his constructive possession of the sawed-off shotgun in the vehicle he was driving. As the dissent points out, the former conviction required an additional fact, Calvert's status as a serious violent felon, which was of no moment to the latter. That may mean that under a strict reading of *Spivey v. State*, 761 N.E.2d 831, 833 (Ind.2002) ("[T]he Indiana Double Jeopardy Clause is not violated when the evidentiary facts establishing the essential elements of one offense also establish only one or even several, but not all, of the essential elements of a second offense."), the convictions do not amount to *constitutional* double jeopardy. *But cf. Alexander*, 772 N.E.2d at 478 (opinion on rehearing reasoning that under *Richardson/Spivey* actual evidence test, dual convictions are barred if evidentiary facts establishing one or more elements of *either* challenged offense also establish all elements of the other challenged offense). Even if that is the case, however, Calvert's convictions fall under the common law category of double jeopardy clarified in *Guyton*: "[c]onviction and punishment for a crime which consists of the very same act as an element of another crime for which the defendant has been convicted and punished." 771 N.E.2d at 1143 (quotation omitted). That is, given how this case was charged and proven, Calvert's conviction of possessing a sawed-off shotgun was based on the very same act—his having the sawed-off shotgun in his vehicle—which formed an essential element of possession of a firearm by a serious violent felon.

Calvert and the State are both correct that a double jeopardy violation occurred and, therefore, Calvert's conviction of pos-

session of a sawed-off shotgun must be vacated. *See Gregory v. State,* 885 N.E.2d 697, 703 (Ind.Ct.App.2008) (remanding to vacate conviction because "[a] double jeopardy violation occurs when judgments of conviction are entered and cannot be remedied by the practical effect' of concurrent sentences or by merger after conviction has been entered") (citation omitted), *trans. denied.* Accordingly, we reverse and remand with instructions to vacate that conviction and the accompanying sentence.

### III. Inappropriate Sentence

Because the trial court imposed identical, concurrent sentences on both of Calvert's Class B felony convictions, and his conviction of possessing a firearm as a serious violent felon is affirmed, our reversal of Calvert's attempted robbery conviction does not require remand for resentencing. We therefore address Calvert's argument that his sentence of fifteen years with three of those years suspended to probation is inappropriate. Calvert requests that we revise his sentence to the advisory sentence of ten years.

### A. Standard of Review

■■■■ This court has authority to revise a sentence "if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." Ind. Appellate Rule 7(B). In making this determination, we may look to any factors appearing in the record. *Roney v. State,* 872 N.E.2d 192, 206 (Ind.Ct.App.2007), *trans denied; cf. McMahon v. State,* 856 N.E.2d 743, 750 (Ind.Ct.App.2006) ("[I]nappropriateness review should not be limited . . . to a

simple rundown of the aggravating and mitigating circumstances found by the trial court."). Nevertheless, the defendant bears the burden to "persuade the appellate court that his or her sentence has met this inappropriateness standard of review." *Childress v. State,* 848 N.E.2d 1073, 1080 (Ind.2006). In reviewing such claims, we "may consider all aspects of the penal consequences imposed by the trial judge in sentencing the defendant," including the fact a portion of the sentence is suspended to probation. *Davidson v. State,* 926 N.E.2d 1023, 1025 (Ind.2010). "[W]hether we regard a sentence as appropriate at the end of the day turns on our sense of the culpability of the defendant, the severity of the crime, the damage done to others, and myriad other factors that come to light in a given case." *Cardwell v. State,* 895 N.E.2d 1219, 1224 (Ind.2008).

### B. Nature of the Offense

■■■■ None of the aggravating and mitigating circumstances found by the trial court relate to the nature of Calvert's offense, which likewise strikes us as a typical instance of unlawful possession of a firearm. Calvert's actions of driving a vehicle in which a shotgun and BB guns were present, and doing so with others who were contemplating committing a robbery, posed a real danger to community safety. However, such harms are contemplated by the statutory definition making Calvert's offense a Class B felony.

### C. Calvert's Character [4]

■■■■ Calvert was twenty years old when he committed the present offense

---

4. We note that Calvert's counsel, by including the pre-sentence investigation report as part of the Appellant's Appendix on white paper, failed to comply with applicable rules governing the filing of documents excluded from

public access. *See* Ind. Appellate Rule 9(J) ("Documents and information excluded from public access pursuant to Administrative Rule 9(G) shall be filed in accordance with Trial Rule 5(G). . . ."); Ind. Administrative Rule

and twenty-two at the time of sentencing. Calvert's juvenile record consists of adjudications in September 2000 and November 2000 for burglary, criminal mischief, theft, and possessing a look-alike substance, for which the juvenile court imposed concurrent terms of probation. Calvert's adult criminal history consists of November 2003 convictions of burglary, robbery, and attempted burglary, which resulted in an eight-year sentence with four years suspended to probation, and a December 2007 conviction of burglary, resulting in a six-year sentence with two years suspended to probation. In addition, Calvert's probation for the November 2003 convictions was revoked in September 2007 and his previously suspended time was ordered to be served with the Department of Correction.

Calvert is married and has been involved in the lives of his wife's children from a prior relationship. However, he has been unemployed since 2007 due to his incarceration. During the pre-sentence investigation for the present case, Calvert admitted to being a gang member, although he did not identify the name of the gang. He further admitted to extensive alcohol and drug abuse, including recent use of ecstasy, heroin, marijuana, vicodin, and oxycontin, and told the trial court at sentencing that his pattern of criminal activity is related to his substance abuse. In order to address Calvert's substance abuse, the trial court's sentencing order provides that upon his release from the Department of Correction, Calvert shall be admitted to Richmond State Hospital, and upon successful completion of the treatment program, "his probationary period will be reduced by eighteen (18) months." Appellant's App. at 223.

In light of Calvert's significant criminal history and pattern of unlawful substance abuse, we cannot say the sentence imposed by the trial court is inappropriate. The weight given to a defendant's criminal history varies "by the number of prior convictions and their gravity, by their proximity or distance from the present offense, and by any similarity or dissimilarity to the present offense that might reflect on a defendant's culpability." *Bryant v. State,* 841 N.E.2d 1154, 1156 (Ind.2006). A conviction of possessing a firearm as a serious violent felon necessarily encompasses some prior criminal history,[5] but Calvert has multiple felony convictions that are both near in time to his present offense and similar in gravity. In addition, Calvert's substance abuse reflects poorly upon his character. By imposing a moderately enhanced sentence of fifteen years, suspending three of those years to probation, and ordering Calvert to receive substance abuse treatment at the beginning of his probation, the trial court appropriately made use of a number of correctional options at its disposal. *See Davidson,* 926 N.E.2d at 1025 (review of appropriateness of sentence includes consideration of "whether a portion of the sentence is ordered suspended or otherwise crafted using any of the variety of sentencing tools available to the trial judge"). Calvert

---

9(G)(1)(b)(viii) (excluding from public access "[a]ll pre-sentence reports as declared confidential by Ind.Code § 35–38–1–13"); Ind. Trial Rule 5(G)(1) ("Whole documents that are excluded from public access pursuant to Administrative Rule 9(G)(1) shall be tendered on light green paper or have a light green coversheet attached to the document, marked Not for Public Access' or 'Confidential.' ").

**5.** A serious violent felon is defined as a person who has been convicted of committing, attempting to commit, or conspiring to commit a serious violent felony. Ind.Code § 35–47–4–5(a). The term "serious violent felony" includes, among other crimes, robbery and burglary as a Class A or Class B felony. Ind. Code § 35–47–4–5(b)(12), (15).

bears the burden of persuading this court that his sentence is inappropriate, and we conclude he has failed to do so.

### Conclusion

The evidence is insufficient to support Calvert's conviction of attempted robbery because the State failed to prove a substantial step toward the robbery of the liquor store. Sufficient evidence supports Calvert's conviction of possessing a firearm as a serious violent felon, but his additional conviction of possessing a sawed-off shotgun violates double jeopardy. Therefore, Calvert's conviction of possessing a firearm as a serious violent felon is affirmed, the convictions of attempted robbery and possession of a sawed-off shotgun are reversed, and the case is remanded with instructions to vacate those convictions. Calvert's sentence for possessing a firearm as a serious violent felon is not inappropriate, and because that sentence is the same as the aggregate sentence imposed by the trial court, the sentence is therefore affirmed.

Affirmed in part, reversed in part, and remanded.

FRIEDLANDER, J., concurs.

KIRSCH, J., concurs in part and dissents in part with separate opinion.

KIRSCH, Judge, concurring in part and dissenting in part.

I fully concur in the decisions of my colleagues reversing Calvert's conviction for attempted robbery, affirming his conviction for possession of a firearm by a serious violent felon and affirming his sentences. As to their conclusion that Calvert's convictions for possession of a firearm by a serious violent felon and possession of a sawed-off shotgun violate double jeopardy provisions, however, I respectfully dissent.

Although the State agrees with Calvert that a double jeopardy violation occurred, I think in doing so, it misconstrues the actual evidence test set forth by our Supreme Court in *Richardson v. State,* 717 N.E.2d 32 (Ind.1999). In *Richardson,* the Court held that the double jeopardy clause is violated if there is "a reasonable possibility that the evidentiary facts used by the fact-finder to establish the essential elements of one offense may also have been used to establish the essential elements of a second challenged offense." *Id.* at 53.

Then, the Court in *Spivey v. State,* 761 N.E.2d 831, 833 (Ind.2002) held "[U]nder the *Richardson* actual evidence test, the Indiana Double Jeopardy Clause is not violated when the evidentiary facts establishing the essential elements of one offense also establish only one or even several, but not all, of the essential elements of a second offense."

In *Ho v. State,* 725 N.E.2d 988, 992 (Ind.Ct.App.2000), we confronted a double jeopardy claim arising from a defendant's convictions for robbery and carrying a handgun without a license. We concluded that double jeopardy protections were not violated because "distinct evidentiary facts were used to prove that Ho committed robbery while armed with a handgun, while a lack of evidentiary facts was used to prove that Ho did not have a license to carry that handgun." *Id.* at 993. We held that Ho failed to demonstrate "a reasonable possibility that the same evidentiary facts may have been used to establish the essential elements of each challenged offense." *Id.* In *Ho,* Ho was convicted of both committing robbery while armed with a handgun and possession of an unlicensed handgun. The fact that Ho did not have a license for the handgun was irrelevant for purposes of the robbery conviction, and the fact that Ho committed a robbery

while armed was irrelevant to the handgun conviction.

Similarly, in *Mickens v. State*, 742 N.E.2d 927, 931 (Ind.2001), our Supreme Court noted that carrying the gun along the street was one crime and using it was another. The court held that the *Richardson* actual evidence test was not met and rejected Mickens' double jeopardy claim.

Here, Calvert, a conceded serious violent felon, was convicted of possession of a firearm; the fact that the firearm was a sawed-off shotgun was of no moment to this conviction. He was also convicted of the separate offense of possession of a sawed-off shotgun; the fact that he was a serious violent felon was of no moment to this conviction. When Calvert, a serious violent felon, possessed a gun, he committed one crime; when he possessed a gun that was illegal for anyone to possess, he committed a second crime.

I would affirm the Calvert's convictions for possession of a firearm by a serious violent felon and possession of a sawed-off shotgun.