## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Jul 03 2018, 10:28 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Karen M Heard
Evansville, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Matthew B. Mackenzie
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Cody Ryan Banks,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff.* | July 3, 2018<br><br>Court of Appeals Cause No.<br>82A04-1712-CR-2959<br><br>Appeal from the Vanderburgh<br>Superior Court<br><br>The Honorable Robert J. Pigman,<br>Judge<br><br>Trial Court Cause No. 82D03-1507-F6-4085 |

**Riley, Judge.**

# STATEMENT OF THE CASE

[1]    Appellant-Defendant, Cody Banks (Banks), appeals his conviction and sentence for Count I, domestic battery in the presence of a child, a Level 6 felony, Ind. Code § 35-42-2-1.3(a)(b)(2); and Count II, domestic battery, a Class A misdemeanor, I.C.§ 35-42-2-1.3(a).

[2]    We affirm.

# ISSUES

[3]    Banks presents three issues on appeal, which we restate as:

(1)  Whether Banks' domestic battery convictions violate the prohibition against double jeopardy;

(2)  Whether the trial court abused its discretion in sentencing Banks; and

(3)  Whether Banks's sentence is appropriate based on the nature of the offenses and his character.

# FACTS AND PROCEDURAL HISTORY

[4]    On July 12, 2015, Brittney Banks (Brittney) was unpacking after moving into a new apartment in Evansville, Indiana, with Banks and their three minor children—aged five, three, and eleven-months.  As Brittney was going through the boxes comprised of the children's clothes and toys, she expressed to Banks that she would be donating any unwanted items.  At first, Banks was okay with Brittney's idea; however, he later changed his mind.  In the past, the couple had

disposed of the children's clothing and toys through a yard sale. Banks informed Brittney that he was appalled by Brittney's proposition instead of disposing of the unwanted items in a yard sale.

[5] The two began arguing, and Banks accused Brittney of being a bad mother. Brittney then removed herself from the confrontation and went to their bedroom upstairs to change their eleven-month-old daughter. Banks followed Brittney. According to Brittney, Banks had now "gotten a lot worse." (Transcript Vol. I, p. 16). Banks continued to berate Brittney, and after she was done changing their daughter, Brittney told Banks that she was tired of arguing and began to leave the room. While in the door way holding their daughter in her arms, Banks "started throwing DVD's and CD's" as well the couples' fifteen-inch television across the room. (Tr. Vol. II, p. 17). Banks followed Brittney as she walked down the stairs where he tossed additional items. Brittney managed to catch her balance and avoided falling with her daughter in her arms.

[6] Brittney thereafter walked to the kitchen, put her daughter in the high chair, and began making some oatmeal. Banks followed Brittney into the kitchen and continued to verbally abuse her. Brittney ignored Banks and proceeded to put the oatmeal in the microwave. When Brittney turned around, Banks shoved her into the wall. Brittney felt "[l]ots of pain" in her right shoulder. (Tr. Vol. II, p. 19). Brittney turned around and walked away from Banks and toward the sink. She subsequently reached for the oatmeal in the microwave, set it in the sink, and proceeded to wash her hands before feeding her daughter. When

Brittney turned around, "Banks . . . shoved his fist into [her] throat," causing pain, and bruising. (Tr. Vol. II, p. 19). At that point, Brittney called the police.

[7] Officer Mathew Hastings (Officer Hastings) of the Evansville Police Department responded to the domestic disturbance call. While interviewing Brittney, Officer Hastings observed the redness and bruising on Brittney's neck. After Officer Hastings read Banks his *Miranda* warnings, Banks reported that he and Brittney were "arguing about their financial situation," that the argument continued when they went upstairs to their bedroom, and he became livid and "slammed the T.V. onto the ground." (Tr. Vol. II, p. 81). Banks then advised Officer Hastings that when they went back into the kitchen, Brittney "raised her hand and he pushed her away from him." (Tr. Vol. II, p. 81). Banks admitted only to pushing Brittney during the exchange, and he stated that his eleven-month-old daughter was present during the altercation.

[8] On July 14, 2015, the State filed an Information, charging Banks with Count I, a Level 6 felony domestic battery in the presence of a child less than sixteen years of age; and Count II, a Class A misdemeanor battery. Following a jury trial on October 26, 2017, Banks was found guilty as charged. On November 20, 2017, the trial court conducted a sentencing hearing. At the close of the evidence, the trial court sentenced Banks to eighteen months for the Level 6 felony offense, with the first year to be served in the Department of Correction (DOC), and remaining six months to be served on work release. As for the Class A misdemeanor, the trial court ordered Banks to serve a concurrent six-month sentence on work release.

Banks now appeals.  Additional facts will be provided as necessary.

## DISCUSSION AND DECISION

### I. *Double Jeopardy*

Banks contends that his Level 6 and Class A misdemeanor domestic battery convictions run afoul of double jeopardy principles, and the Class A misdemeanor battery conviction should therefore be vacated.

A conviction for two or more offenses violates the double jeopardy clause of the Indiana Constitution "if, with respect to either the statutory elements of the challenged crimes or the actual evidence used to convict, the essential elements of one challenged offense also establish the essential elements of another challenged offense." *Calvert v. State*, 930 N.E.2d 633, 641 (Ind. Ct. App. 2010) (quoting *Richardson v. State*, 717 N.E.2d 32, 49 (Ind. 1999)).  Along with constitutional double jeopardy prohibitions, "other categories of double jeopardy based on statutory construction and common law prohibit multiple convictions or punishments for the same crime." *Id*. at 642.  Thus, "[c]onviction and punishment for a crime which consists of the very same act as another crime for which the defendant has been convicted and punished"

cannot stand. *Id.*[1] Whether convictions violate double jeopardy is a pure question of law, which we review *de novo. Rexroat v. State*, 966 N.E.2d 165, 168 (Ind. Ct. App. 2012), *trans. denied*.

[12] Application of the same evidence test requires the court to: (1) identify the essential elements of each of the challenged crimes; and (2) evaluate the evidence from the perspective of the finder of fact. *Newgent v. State*, 897 N.E.2d 520, 525 (Ind. Ct. App. 2008). In determining the facts used by the jury to establish the elements of each offense, it is appropriate to consider the charging information, jury instructions, and arguments of counsel. *Id.*

[13] For the Level 6 felony domestic battery committed in the presence of a child less than sixteen years of age, the State charged Banks as follows: *Banks did knowingly or intentionally touch Brittney . . . , who is the spouse or was the spouse of . . . Banks; in a rude, insolent, or angry manner; to wit: "by shoving/pushing her and/or punching [Brittney] resulting in bodily injury, to wit: . . . Banks committed said offense in the presence of a child less than 16 years of age."* (Appellant's App. Vol. II, p. 102) (italics in original). For the Class A misdemeanor domestic battery, in pertinent part, the State charged Banks as follows: "*Banks did knowingly or intentionally*

---

[1] Banks has not raised a federal double jeopardy claim.

*touch Brittney . . ., who is the spouse or was the spouse of . . . Banks; in a rude, insolent, or angry manner; to wit: by shoving/pushing her and/or punching her resulting in bodily injury.*" (Appellant's App. Vol. II, p. 102) (italics in original).

[14] During opening arguments, the State contended that after Brittney made her way into the kitchen and sat her eleven-month-old daughter in the highchair, Banks yelled and verbally abused Brittney. The State argued that the first battery event occurred when Banks approached Brittney and he "pushes her." (Tr. Vol. II, p. 5). The State argued that a second battery incident occurred when Banks hit Brittney "across the neck." (Tr. Vol. II, p. 5). Lastly, during closing arguments, the State once more argued "[T]here are two rounds of battery. There's the battery when he shoves Brittney in the wall, and then there's a battery when he goes to the throat." (Tr. Vol. II, p. 143).

[15] Here, we find that Banks's convictions do not violate the actual evidence test. During closing arguments, the State differentiated between the evidence used to support each Count, arguing that "there was a break in the action[s]" taken by Banks. (Tr. Vol. II, p. 143). The evidence presented at trial showed that Banks pushed Brittney's shoulder in the wall and continued to argue and yell at her. After the first push, Brittney walked to the microwave to retrieve her daughter's oatmeal and then walked to the sink to wash her hands. When Brittney turned around, Banks punched Brittney in the throat. In the instant case, the State did not have to rely upon the same evidence to prove both the Level 6 felony domestic battery in the presence of a child felony, and Class A misdemeanor

domestic battery Count. Accordingly, we conclude that Banks's constitutional protection against double jeopardy has not been violated.

## II. *Abuse of Sentencing Discretion*

[16] Banks argues that the trial court abused its discretion by failing to consider his mental disability as a mitigating factor at his sentencing hearing. Sentencing decisions "rest within the sound discretion of the trial court and are reviewed on appeal only for an abuse of discretion." *Anglemyer v. State*, 868 N.E.2d 482, 490 (Ind. 2007), *clarified on reh'g*, 875 N.E.2d 218 (Ind. 2007). "An abuse of discretion occurs if the decision is clearly against the logic and effect of the facts and circumstances before the court, or the reasonable, probable, and actual deductions to be drawn therefrom." *Id*. (quotations and citation omitted). A trial court may abuse its discretion by failing to enter a sentencing statement, entering findings of aggravating and mitigating factors unsupported by the record, omitting factors clearly supported by the record and advanced for consideration, or giving reasons that are improper as a matter of law. *Id*. at 490-91. "Under those circumstances, remand for resentencing may be the appropriate remedy if we cannot say with confidence that the trial court would have imposed the same sentence had it properly considered reasons that enjoy support in the record." *Id*. at 491.

[17] Additionally, a trial court is under no obligation "to accept a defendant's claim as to what constitutes a mitigating circumstance." *Weedman v. State*, 21 N.E.3d 873, 893 (Ind. Ct. App. 2014), *trans. denied*. In fact, "[w]here the trial court

does not find the existence of a mitigating factor after it has been argued by counsel, the trial court is not obligated to explain why it has found that the factor does not exist." *Phelps v. State*, 969 N.E.2d 1009, 1019 (Ind. Ct. App. 2012), *trans. denied*. "A claim that the trial court failed to find a mitigating circumstance requires the defendant to establish that the mitigating evidence is both significant and clearly supported by the record." *Weedman*, 21 N.E.3d at 893. Ultimately, if we find that the trial court has abused its sentencing discretion, our court will remand for resentencing "if we cannot say with confidence that the trial court would have imposed the same sentence had it properly considered reasons that enjoy support in the record." *Anglemyer*, 868 N.E.2d at 491.

[18] During the sentencing hearing, the trial court did not identify any mitigating or aggravating factors. Banks now claims that the trial court abused its discretion because it's sentencing statement did not make any reference to Bank's mental disability despite the issue being raised during the sentencing hearing, and identified in the pre-sentence investigation (PSI) report. Post-*Anglemyer*, a proper inquiry is whether Bank's mental disability was a significant mitigating factor supported by the record. "[I]n order for a [defendant's] mental history to provide a basis for establishing a mitigating factor, there must be a nexus between the defendant's mental health and the crime in question." *Weedman*, 21 N.E.3d at 894 (second alteration in original).

[19] Although he did not specifically identify his mental health issues as a mitigating factor for the trial court to consider, during the sentencing hearing, Banks'

counsel argued, "Judge, I would just note for the court that . . . Banks is an individual of mild to mild intellectual handicap . . . [as] stated by Dr. [David] Cerling" (Dr. Cerling). (Tr. Vol. II, p. 165). We note that prior to Banks' jury trial, the trial court ordered a psychological evaluation in order determine if Banks was competent to stand trial. Dr. Cerling concluded that while Banks "has a documented history of a mild intellectual handicap," he did not "otherwise present with a significant mental illness that substantially impairs his ability to perceive reality or to communicate with significant others in his life." (Appellant's App. Conf. Vol. II, p. 37). Then during the presentencing interview, Banks self-reported that "he suffers from a learning disability and he is illiterate. He further reported that he receives approximately $700 per month in disability benefits." (Appellant's App. Conf. Vol. II, p. 37).

[20] Other than his own counsel's summation that he had mental limitations, Banks offered no evidence that his mental disability motivated his crime or that they affected his ability to control his behavior at the time of the crime. *Steinberg v. State*, 941 N.E.2d 515, 534 (Ind. Ct. App. 2011), *trans. denied*. Since no evidence was presented to show a nexus between his intellectual limitation and the crimes committed, we find no abuse of discretion in the trial court's sentencing decision.

### III. *Inappropriate Sentence*

[21] Banks additionally claims that his aggregate eighteen-month sentence is inappropriate in light of the nature of the offenses and character. In cases where a trial court imposes a sentence that is authorized by statute, our court

may revise the sentence if, "after due consideration of the trial court's decision, [we] find[] that the sentence is inappropriate in light of the nature of the offense and the character of the offender." Ind. Appellate Rule 7(B). Appellate Rule 7(B) provides for sentence review in an "attempt to leaven the outliers, and identify some guiding principles for trial courts and those charged with improvement of the sentencing statutes, but not to achieve a perceived 'correct' result in each case." *Cardwell v. State*, 895 N.E.2d 1219, 1225 (Ind. 2008). Ultimately, "whether we regard a sentence as appropriate at the end of the day turns on our sense of the culpability of the defendant, the severity of the crime, the damage done to others, and myriad other factors that come to light in a given case." *Id*. at 1224. Our court focuses on "the length of the aggregate sentence and how it is to be served." *Id*. Banks bears the burden of persuading this court that his sentence is inappropriate. *Corbally v. State*, 5 N.E.3d 463, 471 (Ind. Ct. App. 2014).

[22] "[T]he advisory sentence is the starting point [that] our legislature has selected as [an] appropriate sentence for the crime committed." *Richardson v. State*, 906 N.E.2d 241, 247 (Ind. Ct. App. 2009) (citing *Anglemyer*, 868 N.E.2d at 494). The advisory sentence for a Level 6 felony is one year, with a sentencing range of six months and two and one-half years. I.C. § 35-50-2-7(b). Here, the trial court imposed an eighteen-month sentence, with one year executed in the DOC, and the remaining six to be served on work release. For his Class A misdemeanor domestic battery offense, Banks faced a maximum sentence of

one year. I.C. § 35-50-3-2. The trial court imposed a concurrent six-month sentence to be served on work release.

[23] The nature of the offense is found in the details and circumstances of the commission of the offense and the defendant's participation. *Croy v. State*, 953 N.E.2d 660, 664 (Ind. Ct. App. 2011). Banks became angry with Brittney after she proposed to get rid of unwanted clothes and toys by donating them to family and friends, instead of disposing the items in a yard sale. Following a verbal altercation, Brittney removed herself from the argument and went upstairs to change their youngest daughter. While in their bedroom upstairs, Banks threw items at Brittney and broke other items out of anger. Again, Brittney removed herself from the argument by going to the kitchen downstairs. As Brittney was trying to feed their eleven-month old daughter, Banks shoved Brittney's shoulder into the wall, and then moments later, Banks hit Brittney's throat with his fist, causing her pain and bruising. Banks cannot show that his eighteen-month sentence is inappropriate in light of the nature of the offenses.

[24] When considering the character of the offender, one relevant fact is the defendant's criminal history. *Rutherford v. State*, 866 N.E.2d 867, 874 (Ind. Ct. App. 2007). The significance of a criminal history in assessing a defendant's character varies based on the gravity, nature, and number of prior offenses in relation to the current offense. *Id*. While a record of arrests may not be used as evidence of criminal history, it can be "relevant to the trial court's assessment of the defendant's character in terms of the risk that he will commit another crime." *Cotto v. State*, 829 N.E.2d 520, 526 (Ind. 2005). We note that Banks's

criminal record is limited. In 2008, he was charged with a Class B misdemeanor reckless driving. Banks was then sentenced for a year for terroristic threatening in Kentucky in 2015. Moreover, after Banks was charged in the instant case and was out on bond, he was charged and convicted of Class A misdemeanor theft.

[25] At the sentencing hearing, the State read Brittney's victim impact statement in which she described the effect of Banks's attack as follows:

> This case has impacted my life by all the domestic abuse I endured of the six years we were together. My children included. Not only did we suffer physical abuse, but also mental, sexual, and psychological abuse. As well, I suffer from PTSD, depression, anxiety, and live in constant fear of retaliation against me for telling. [Banks] needs to serve a time like I did for the six years of abuse. I'm asking that he receive the maximum amount allowed by law. He needs to understand the scars that he has left on me and my children will never heal or be forgotten. We will forever be changed by his abuse to all of us. My children and I have nightmares, [m]y children have anxiety and don't trust people, especially men. My children are learning not to (inaudible) each other, not to keep secrets anymore. We all have to go to domestic abuse counseling to learn how to cope with all of the abuse we have been through.

(Tr. Vol. II, p. 166-67). Here, Banks harangued, verbally abused, pushed, and eventually struck Brittney in front of their eleven-month old daughter. Moreover, we find that the fact that his eleven-month-old daughter witnessed his physical aggression against Brittney, hardly speaks positively for his character. In light of the foregoing circumstances, Banks has failed to persuade

us that his aggregate eighteen-month sentence is inappropriate in light of the nature of the offenses and his character.

## CONCLUSION

[26] For the reasons stated, we conclude that Banks's convictions do not violate the prohibition against double jeopardy. Also, the trial court did not abuse its sentencing discretion. We further conclude that Banks's sentence is not inappropriate in light of the nature of the offenses and his character.

[27] Affirmed.

[28] May, J. and Mathias, J. concur