## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jan 16 2019, 7:36 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Anthony C. Lawrence
Anderson, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Henry A. Flores, Jr.
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Demonae Deshawn Lewis, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff.* | January 16, 2019 <br><br> Court of Appeals Case No. 18A-CR-1423 <br><br> Appeal from the Madison Circuit Court <br><br> The Honorable Angela G. Warner Sims, Judge <br><br> Trial Court Cause No. 48C01-1610-F1-2111 |

**Bailey, Judge.**

# Case Summary

Demonae Deshawn Lewis ("Lewis") was convicted of several offenses, the most serious of which was Attempted Murder, a Level 1 felony.[1] Lewis now appeals, presenting a single issue that we restate as whether the trial court abused its discretion by admitting certain identification evidence. We conclude that any error in the admission of the challenged identification evidence was—at most—harmless. However, we *sua sponte* identify a double jeopardy violation not remedied through the merger of convictions. We therefore reverse and remand with instructions to vacate the conviction and sentence for Carrying a Handgun Without a License, as a Class A misdemeanor.[2] We otherwise affirm.

# Facts and Procedural History

Around September of 2016, Lewis became acquainted with Zacery Trover ("Trover") who began supplying Lewis with synthetic marijuana. On October 11, 2016, Lewis met with Trover and accused Trover of shorting him. Lewis then took a gun from Trover and said Trover could get it back after bringing him $15. Trover left and borrowed money from his grandmother. Trover later met with Lewis and handed him $15, but Lewis refused to return the gun.

---

[1] Ind. Code §§ 35-42-1-1, 35-41-5-1(a).

[2] I.C. § 35-47-2-1.

[3] Later that day, Lewis called Trover, apologized, and said Trover could come back and get the gun. Trover then asked his friend Jerry Mabbitt ("Mabbitt") to go on a drive with him, and Trover drove them over to meet with Lewis. After Trover parked, Lewis approached the driver's window, holding Trover's gun. Lewis said that he should "smoke" Trover and Mabbitt. Tr. Vol. II at 199. Lewis then fired the gun into the vehicle, shooting Trover in the face, skull, and shoulder. Mabbitt yelled to Trover, who managed to drive them both to safety.

[4] Trover was flown out of town for medical treatment, and he survived his injuries. While Trover was being treated, officers from the Anderson Police Department began canvassing the area of the shooting. Detective Trent Chamberlain ("Detective Chamberlain") spoke with Warren Allen ("Allen"), who lived nearby and heard gunshots. While Detective Chamberlain spoke with Allen, he saw Lewis sitting on Allen's porch. Detective Chamberlain spoke with Lewis, who gave a different name and two different social security numbers. Around this time, Sergeant Kevin Earley ("Sergeant Earley") met with Mabbitt, who agreed to show Sergeant Earley where he and Trover had been parked. Sergeant Earley drove Mabbitt to that location. Sergeant Earley eventually pulled around the corner, which situated them near Allen's residence, where officers stood outside. Sergeant Earley asked Mabbitt if he recognized anyone. After speaking with Mabbitt, Sergeant Earley contacted Detective Chamberlain, relaying that he had a positive identification for the shooter. Detective Chamberlain arrested Lewis. At some point later, Allen found Lewis's cellphone and Trover's gun stashed in Allen's crawlspace.

[5] The State charged Lewis with Count I: Attempted Murder, a Level 1 felony; Count II: Unlawful Possession of a Firearm by a Serious Violent Felon, as a Level 4 felony;[3] Count III: Carrying a Handgun with a License, as a Class A misdemeanor; and Count IV: Carrying a Handgun Without a License, as a Level 5 felony.[4] The State also sought a firearm enhancement.[5]

[6] Before trial, Lewis moved to suppress any identification made by Mabbitt. He argued that any out-of-court identification was made under impermissibly suggestive circumstances, and that any in-court identification would be tainted therefrom, contrary to his state and federal constitutional rights. The trial court held a hearing and denied the motion to suppress.

[7] A bifurcated trial commenced on April 18, 2018, at the outset of which the State moved to dismiss the felony count of Carrying a Handgun Without a License. The trial court then conducted an initial guilt phase, during which (1) Trover identified Lewis as the shooter; (2) Mabbitt identified Lewis as the shooter; and (3) Lewis testified that he brought the gun to Trover's vehicle, but that the gun accidentally fired when Trover tried to pry the gun from his hand. The jury found Lewis guilty of the counts tried to it: Attempted Murder and misdemeanor Carrying a Handgun Without a License. Lewis then pleaded guilty to Unlawful Possession of a Firearm by a Serious Violent Felon, and he

---

[3] I.C. § 35-47-4-5(c).

[4] I.C. § 35-47-2-1(e)(2)(A)(i).

[5] I.C. § 35-50-2-11(b)(1).

admitted to having used a firearm. At that point, the court said it "will accept [Lewis's] pleas of guilty, enter judgment and conviction [*sic*] for Count I, which was found by the Jury; Count II, which was made by admission from the Defendant; Count III, which was found to be guilty [*sic*] by Jury; and Count – it would be V, which would be the enhancement." Tr. Vol. IV at 44. The trial court also noted that the State had previously moved to dismiss Count IV.

[8] At the ensuing sentencing hearing, the court orally pronounced a sentence. On Count I, Attempted Murder, the court ordered Lewis to serve thirty-five years in the Indiana Department of Correction. The court enhanced this sentence by fifteen years, producing a fifty-year sentence on the Level 1 felony. On Count II, Unlawful Possession of a Firearm by a Serious Violent Felon, the trial court sentenced Lewis to ten years in the Indiana Department of Correction, and ordered that the sentence run consecutive to the sentence on Count I. As to Count III, misdemeanor Carrying a Handgun Without a License, the trial court "sentenced [Lewis] to one (1) year at the Madison County Detention Center." *Id.* at 68. The court stated that "Count III will merge into Count II, resulting in an aggregate sentence between the four (4) counts of sixty (60) years." *Id.* at 68. The court later entered a written sentencing order, which shows a one-year sentence for Count III. The order also states that "Count III is merged into Count II for sentencing purpose[s]." Appellant's App. Vol. II at 110.

[9] Lewis now appeals.

# Discussion and Decision

## Identification

[10] Lewis argues that the court should have suppressed Mabbitt's identification of him as the shooter. Yet, because Lewis did not pursue an interlocutory appeal of the denial of his motion to suppress, we treat his argument as a challenge to the admission of evidence. *See, e.g.*, *Clark v. State*, 994 N.E.2d 252, 259 (Ind. 2013). The admission of evidence at trial "is a matter we leave to the discretion of the trial court." *Id.* at 259-60. We review "for abuse of that discretion and reverse only when admission is clearly against the logic and effect of the facts and circumstances and the error affects a party's substantial rights." *Id.* at 260.

[11] Lewis argues that Mabbitt's identification was tainted by unduly suggestive procedures, running afoul of his constitutional rights. Yet, even assuming *arguendo* that the trial court abused its discretion by admitting the challenged identification evidence, at trial, Lewis did not dispute his involvement in the incident. Instead, the jury heard Lewis testify that the shooting was accidental. Thus, we conclude that any alleged error in the admission of the cumulative identification evidence was, at most, harmless. *See* Ind. Appellate Rule 66(A) ("No error or defect in any ruling . . . is ground for granting relief or reversal on appeal where its probable impact, in light of all the evidence in the case, is sufficiently minor so as not to affect the substantial rights of the parties.").

# Double Jeopardy

[12] Double jeopardy violations implicate fundamental rights, and this Court may address such violations *sua sponte*. *See Logan v. State*, 729 N.E.2d 125, 136 (Ind. 2000); *Whitham v. State*, 49 N.E.3d 162, 168 (Ind. Ct. App. 2015), *trans. denied*. Whether convictions violate double jeopardy is a pure question of law, which we review *de novo*. *See Hines v. State*, 30 N.E.3d 1216, 1219 (Ind. 2015).

[13] Article 1, Section 14 of the Indiana Constitution provides that "[n]o person shall be put in jeopardy twice for the same offense." "[T]wo or more offenses are the 'same offense' . . . if, with respect to *either* the statutory elements of the challenged crimes *or* the actual evidence used to convict, the essential elements of one challenged offense also establish the essential elements of another challenged offense." *Richardson v. State*, 717 N.E.2d 32, 49 (Ind. 1999). "In addition to constitutional double jeopardy, other categories of double jeopardy based on statutory construction and common law prohibit multiple convictions or punishments for the same crime." *Calvert v. State*, 930 N.E.2d 633, 641-42 (Ind. Ct. App. 2010) (citing *Guyton v. State*, 771 N.E.2d 1141, 1143 (Ind. 2002)), *disapproved of on other grounds*, *B.T.E. v. State*, 108 N.E.3d 322 (Ind. 2018). These categories prohibit, *inter alia*, conviction and punishment for a crime that consists of the very same act as an element of another crime for which the defendant has been convicted and punished. *Guyton*, 771 N.E.2d at 1143 (citing *Richardson*, 717 N.E.2d at 56 (Sullivan, J., concurring)).

Here, the jury returned a guilty verdict for misdemeanor Carrying a Handgun Without a License. To convict Lewis of this offense, the State was obligated to prove that Lewis (1) carried a handgun (2) in a vehicle or on or about his person.[6] *See* I.C. § 35-47-2-1. At trial, the State argued to the jury that the State "could dispense of that quickly," asserting that Lewis "wasn't in a car" but was "out and about on the streets of our community" with a handgun. Tr. Vol. IV at 2. Later, Lewis pleaded guilty to Unlawful Possession of a Firearm by a Serious Violent Felon.[7] This offense required proof that Lewis, (1) with the requisite status as a serious violent felon, (2) knowingly or intentionally (3) possessed a firearm. *See* I.C. § 35-47-4-5. In setting forth a factual basis, the State incorporated the evidence from the initial phase. Lewis then admitted to having prior convictions for Robbery, and that he knowingly or intentionally possessed a firearm. The articulated factual basis did not specify an instance of possession separate from that supporting the other count of carrying a handgun.

Ultimately, Lewis was convicted of an offense—Carrying a Handgun Without a License—that consisted of the very same act as an element of another offense for which he was convicted: Unlawful Possession of a Firearm by a Serious Violent Felon. *See Calvert*, 930 N.E.2d at 642 (concluding that the defendant's

---

[6] Proof that the defendant lacked a valid license is not an element of the offense, but instead having a license is a defense. I.C. § 35-47-2-24 ("The burden of proof is on the defendant to prove that he is exempt . . . or that he has a license as required under this chapter."); *Harris v. State*, 716 N.E.2d 406, 411-412 (Ind. 1999).

[7] We note that when a defendant pleads guilty in connection with a negotiated plea agreement, the defendant waives the protections against double jeopardy. *E.g.*, *Games v. State*, 743 N.E.2d 1132, 1134-35 (Ind. 2001). Here, however, Lewis pleaded guilty without the benefit of a plea agreement.

conviction for Possession of a Sawed-off Shotgun was improperly based on the very same act—his having the shotgun in his vehicle—that formed an essential element of Unlawful Possession of a Firearm by a Serious Violent Felon).

[16] Nonetheless, at sentencing, the State said it believed Count III "would merge into Count II." Tr. Vol. IV at 61. Thereafter, the trial court merged Count III into Count II, at which point the court had already orally entered judgment of conviction on both counts and imposed sentences on both counts. Merger is a tool used by our trial courts to avoid double jeopardy violations. *E.g.*, *Payton v. State*, 818 N.E.2d 493, 497 (Ind. Ct. App. 2004), *trans. denied*. However, the "act of merging, without also vacating, the convictions is not sufficient" to avoid such violations. *Id.* Indeed, as our supreme court has explained, "[a] double jeopardy violation occurs when a court enters judgment twice for the same offense 'and cannot be remedied by the "practical effect" of concurrent sentences or by merger after conviction has been entered.'" *Hines*, 30 N.E.3d at 1221 (quoting *Jones v. State*, 807 N.E.2d 58, 67 (Ind. Ct. App. 2004), *trans. denied*); *cf. Green v. State*, 856 N.E.2d 703, 704 (Ind. 2006) ("[A] merged offense for which a defendant is found guilty, but on which there is neither a judgment nor a sentence, is 'unproblematic' as far as double jeopardy is concerned.").

[17] In this case, merger alone did not remedy the double jeopardy violation. Thus, we reverse and remand with instructions to vacate the judgment of conviction and accompanying sentence for Carrying a Handgun Without a License.

Affirmed in part, reversed in part, and remanded.

Bradford, J., and Brown, J., concur.