

**FILED**

Apr 28 2023, 8:48 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Darren Bedwell
Marion County Public Defender
Appellate Division
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Theodore E. Rokita
Attorney General of Indiana

Jodi Kathryn Stein
Supervising Deputy Attorney
General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Michael Charles Thomas Gaunt, *Appellant-Defendant,* | April 28, 2023 |
| | Court of Appeals Case No. 22A-CR-1632 |
| v. | Appeal from the Marion Superior Court |
| State of Indiana, *Appellee-Plaintiff.* | The Honorable Cynthia L. Oetjen, Judge |
| | Trial Court Cause No. 49D30-1912-F1-48422 |

**Opinion by Judge Tavitas**
Judges Vaidik and Foley concur.

**Tavitas, Judge.**

## Case Summary

[1] Michael Gaunt appeals his convictions for aggravated battery, a Level 1 felony, and neglect of a dependent, a Level 1 felony. Gaunt's convictions were both elevated to Level 1 felonies based on the death of the victim. Gaunt argues that elevating both of his convictions based on the same death constitutes double jeopardy under one of the common-law rules that were identified in *Richardson v. State*, 717 N.E.2d 32 (Ind. 1999), and adopted by our Supreme Court in *Guyton v. State,* 771 N.E.2d 1141 (Ind. 2002). Gaunt further argues that the trial court erred in its calculation of his credit time. We find that: 1) our Supreme Court supplanted the common-law double jeopardy rules in *Wadle v. State*, 151 N.E.3d 227 (Ind. 2020); and 2) the trial court erred in calculating Gaunt's credit time. We affirm as to Gaunt's convictions, reverse regarding the trial court's credit time calculation, and remand with instructions for the trial court to correct Gaunt's credit time.

## Issues

[2] Gaunt raises two issues on appeal, which we restate as:

    I.     Whether *Wadle* supplanted the common-law double jeopardy rules identified in *Richardson*.

    II.    Whether the trial court erred in calculating the credit time toward Gaunt's sentence.

## Facts

On December 20, 2019, Gaunt was watching his infant son, L.G., who was born in November 2019, while L.G.'s mother, Harley Jones, was out of the house. When Jones returned home, she observed that Gaunt was holding L.G., who appeared "naked, lifeless, just blue almost, [and] not breathing." Tr. Vol. II p. 72. Gaunt would not let Jones call 911 until approximately forty-five minutes later.

Emergency responders took L.G. to the hospital, where he was alive but non-responsive. L.G. was diagnosed with fractures in his right humerus and clavicle, "massive retinal hemorrhages," hemorrhages between his brain and skull and within his brain, and swelling around his neck vertebrae. *Id*. at 180. The physicians attributed L.G.'s injuries to "[s]evere physical abuse including abusive head trauma." *Id*. at 194.

Gaunt was arrested on December 21, 2019. On December 23, 2019, L.G. was pronounced brain dead, and he died hours later.

On December 27, 2019, the State charged Gaunt with two counts: Count I, aggravated battery to a child less than age fourteen; and Count II, neglect of a dependent. Regarding Count II, the State alleged that Gaunt neglected L.G. by "fail[ing] to obtain timely medical care for [L.G.'s] injuries[.]" Appellant's App. Vol. II p. 33. Both counts were elevated to Level 1 felonies based on L.G.'s death.

[7] On January 28, 2022, Gaunt and the State executed a plea agreement, and the trial court set a sentencing hearing for February 17, 2022. The pre-sentencing investigation ("PSI") report reflects that Gaunt had been in jail since December 21, 2019, and would have served 790 actual jail days by the time the trial court held the February 17, 2022 sentencing hearing.

[8] At the February 17, 2022 sentencing hearing, Gaunt withdrew his plea agreement. The trial court held a bench trial on April 25, 2022; found Gaunt guilty of both counts; and entered judgments of conviction on both counts. The trial court then set a sentencing hearing for June 23, 2022.

[9] The State filed a second PSI report on June 21, 2022, which reflects that Gaunt had been in jail since December 21, 2019, and would have served 916 actual days as of the trial court's June 23, 2022 sentencing hearing. The trial court sentenced Gaunt to two concurrent thirty-five-year sentences, each with two years to be served in community corrections and three years suspended to probation. The trial court's sentencing order reflects that Gaunt was in jail since April 24, 2020, had served 790 actual days, and had earned 263 days of good time credit. The trial court's abstract of judgment and order of commitment to community corrections reflect the same. Gaunt now appeals.

## Discussion and Decision

### I. Double Jeopardy

[10] Gaunt first argues that the trial court erred by elevating both of his convictions to Level 1 felonies based on L.G.'s death. Gaunt argues that the trial court

should have, instead, entered his neglect conviction as a Level 3 felony because elevating both convictions to Level 1 felonies based on the same death constitutes double jeopardy. We disagree.

[11] We review double jeopardy violation claims de novo. *See Wadle,* 151 N.E.3d at 237; *Powell v. State*, 151 N.E.3d 256, 262 (Ind. 2020).

[12] In *Wadle* and *Powell*, the Indiana Supreme Court set forth two new frameworks for analyzing whether a defendant's convictions violate principles of substantive double jeopardy.[1] *Wadle*, 151 N.E.3d at 247-50; *Powell*, 151 N.E.3d at 264-65. These cases explicitly overruled *Richardson* and held that our substantive double jeopardy jurisprudence would no longer be governed by the Indiana Constitution but would, instead, be driven primarily by "statutory rules of double jeopardy." *Wadle*, 151 N.E.3d at 235. *Powell* set forth a test for "when a single criminal act or transaction violates a single statute but harms multiple victims," and *Wadle* set forth a test for "when a single criminal act or transaction violates multiple statutes with common elements and harms one or more victims." *Id.* at 247. Gaunt's convictions implicate two statutes, and, thus, the *Wadle* test is implicated.

---

[1] Substantive double jeopardy refers to "claims concerning multiple convictions in a single prosecution, as opposed to 'procedural double jeopardy' claims, which concern convictions for the same offense in successive prosecutions[.]" *Carranza v. State*, 184 N.E.3d 712, 715 Ind. Ct. App. 2022) (quoting *Wadle*, 151 N.E.3d at 248-49; *Powell*, 151 N.E.3d at 263). Our Supreme Court did not alter our analysis of procedural ("constitutional") double jeopardy claims in either *Wadle* or *Powell*.

[13]     Gaunt does not argue that his convictions constitute double jeopardy under

*Wadle*. Instead, he argues that we should apply the common-law rule that, when one conviction is elevated "based on the same bodily injury that forms the basis of [another] conviction, the two cannot stand." *Strong v. State*, 870 N.E.2d 442, 443 (Ind. 2007) (quoting *Pierce v. State*, 761 N.E.2d 826, 830 (Ind. 2002)); *see also Richardson*, 717 N.E.2d at 55 (Sullivan, J., concurring), at 57 (Boehm, J., concurring in result). This common-law "elevation" or "enhancement" rule was one of five rules identified in Justice Sullivan's concurrence in *Richardson*.[2] In *Guyton*, the Indiana Supreme Court adopted these common-law rules as additional bases for finding a double jeopardy violation independent of *Richardson*. 771 N.E.2d at 1143. Gaunt might have been entitled to relief under the common-law elevation rule. *Compare Strong*, 870 N.E.2d at 444 (holding neglect charge could not be elevated based on same death that supported murder conviction), *with McElroy v. State*, 864 N.E.2d 392,

---

[2] The five common-law rules articulated by Justice Sullivan were:

(1) Conviction and punishment for a crime which is a lesser-included offense of another crime for which the defendant has been convicted and punished. . . .

(2) Conviction and punishment for a crime which consists of the very same act as another crime for which the defendant has been convicted and punished. . . .

(3) Conviction and punishment for a crime which consists of the very same act as an element of another crime for which the defendant has been convicted and punished. . . .

(4) Conviction and punishment for an enhancement of a crime where the enhancement is imposed for the very same behavior or harm as another crime for which the defendant has been convicted and punished. . . .

(5) Conviction and punishment for the crime of conspiracy where the overt act that constitutes an element of the conspiracy charge is the very same act as another crime for which the defendant has been convicted and punished. . . .

*Richardson*, 717 N.E.2d at 55-57 (Sullivan, J., concurring).

397-99 (Ind. Ct. App. 2007) (holding convictions for operating a vehicle with an alcohol concentration equivalent of at least .10 and failure to stop after an accident could both be elevated based on the same death), *trans. denied*.

[14]  The State, meanwhile, argues that, in overruling *Richardson*, *Wadle* also replaced the common-law double jeopardy rules with its own test. We are constrained to agree with the State.

[15]  Several factors support the State's interpretation. First, *Wadle* explicitly observed that the Indiana Supreme Court's adoption of the common-law rules "announced by Justice Sullivan" as additional double jeopardy tests independent of *Richardson* "generat[ed] confusion among the bench and bar over the proper standard to address claims of double jeopardy" and resulted in "a patchwork of conflicting precedent." *Wadle*, 151 N.E.3d at 243-44. Further, *Wadle*'s stated purpose was to "articulate an analytical framework in which to resolve claims of substantive double jeopardy under Indiana law." *Id.* at 237. This discussion suggests that, in announcing a new framework for analyzing substantive double jeopardy claims, the Court did not wish to retain the separate and conflicting common-law rules. *See, e.g.*, *Hill v. State*, 157 N.E.3d 1225, 1229 (Ind. Ct. App. 2020) (making similar observations).

[16]  Second, *Wadle* enumerated at least three other sources of protection against multiple punishment other than the *Wadle* and *Powell* tests. *See Wadle*, 151 N.E.3d at 250-53. Yet the Court in *Wadle* did not mention any of the common-

law double jeopardy rules as additional sources of protection against multiple punishment.

[17] Third, *Wadle* noted that "today, we have legislation codifying" several of the common-law double jeopardy rules. *Id.* at 247 (citing Ind. Code §§ 35-38-1-6 and 35-41-5-3). As a panel of our Court in *Woodcock v. State* observed:

> It seems clear, then, that if the common law rules prohibiting conviction and punishment in certain circumstances are codified, and the second step of the *Wadle* analysis is to turn to statutory language to determine intent regarding multiple punishment, . . . the common law rules are incorporated into the *Wadle* analysis and no longer exist independently.

163 N.E.3d 863, 871 (Ind. Ct. App. 2021) (internal citation omitted), *trans. denied*.

[18] Finally, several opinions from this Court have held that the common-law rules identified by Justice Sullivan did not survive *Wadle* as independent tests. *See Morales v. State*, 165 N.E.3d 1002, 1006-07 (Ind. Ct. App. 2021) (elevation rule), *trans. denied*; *Woodcock*, 163 N.E.3d at 870-71 ("very same act" rule); *Jones v. State*, 159 N.E.3d 55, 62 (Ind. Ct. App. 2020) (continuous crime doctrine), *trans. denied*; *Hill*, 157 N.E.3d at 1229 (all common-law rules); *Diaz v. State*, 158 N.E.3 363, 368 (Ind. Ct. App. 2020) (same); *but see Shepherd v. State*, 155 N.E.3d 1227, 1240 (Ind. Ct. App. 2020) (holding that the same act rule survived *Wadle*), *trans. denied*; *Rowland v. State*, 155 N.E.3d 637, 640 (Ind. Ct. App. 2020) (same).

[19]     The foregoing supports our conclusion that *Wadle* replaced the common-law double jeopardy rules. Accordingly, we cannot consider Gaunt's reliance on the common-law elevation rule. Further, because Gaunt raises no argument that his convictions constitute double jeopardy under *Wadle*, we cannot say that Gaunt's double jeopardy rights were violated.

## II. Time Served and Good Time Credit

[20]     Gaunt next argues that the trial court erred by only giving credit for 790 actual days and 263 days of good time credit at the time of sentencing. Gaunt contends that he is entitled to a credit of 916 actual days and 305 days of good time credit. The State agrees, and so do we.

[21]     Indiana Code Section 35-38-3-2(b)(4) requires trial courts to include in their judgments "the amount of credit time earned for time spent in confinement before sentencing." "Determination of a defendant's pretrial credit is dependent upon (1) pretrial confinement, and (2) the pretrial confinement being a result of the criminal charge for which sentence is being imposed." *Hall v. State*, 944 N.E.2d 538, 542 (Ind. Ct. App. 2011) (citing *Bischoff v. State*, 704 N.E.2d 129, 130 (Ind. Ct. App. 1998), *trans. denied*), *trans. denied*. Because pre-sentence jail time credit is a statutory right, trial courts have no discretion in awarding or denying that credit." *Glover v. State*, 177 N.E.3d 884, 886 (Ind. Ct. App. 2021) (citing *Perry v. State*, 13 N.E.3d 909, 911 (Ind. Ct. App. 2014)), *trans. denied*. In reviewing credit time assignments, we review matters of statutory interpretation de novo. *Shepard v. State*, 84 N.E.3d 1171, 1172 (Ind. 2017).

[22] The record reveals that Gaunt was in jail awaiting trial and sentencing from December 21, 2019, to June 23, 2022. He was, therefore, entitled to credit for 915 actual days. The trial court appears to have found that Gaunt was only entitled to credit for 790 actual days based on the February PSI report, but that PSI report was outdated by the time Gaunt was sentenced on June 23, 2022. We cannot discern why the trial court found that Gaunt was in jail only since April 24, 2020.

[23] As for the amount of good time credit to which Gaunt is entitled, Indiana Code Section 35-50-6-4 provides for good time credit according to four classifications. The classification is based on "the most serious offense of which the person was convicted." Ind. Code § 35-50-6-4(h).

[24] Gaunt contends, and the State agrees, that Gaunt should have been assigned to Class B credit time classification. Indiana Code Section 35-50-6-4 provides, in relevant part:

> (b) A person:
>
> > (1) who is not a credit restricted felon; and
> >
> > (2) who is imprisoned for a crime other than a Level 6 felony or misdemeanor or imprisoned awaiting trial or sentencing for a crime other than a Level 6 felony or misdemeanor;
>
> is initially assigned to Class B.

"A person assigned to Class B earns one (1) day of good time credit for every three (3) calendar days or partial calendar days the person is . . . confined awaiting trial or sentencing." Indiana Code § 35-50-6-3.1(c).

[25] We agree that Gaunt should have been assigned to Class B credit time classification. A credit restricted felon is defined as a person who has been convicted of at least one of three offenses enumerated in Indiana Code Section 35-31.5-2-72.[3] Gaunt has not been convicted of any of those offenses, and he, therefore, is not a credit restricted felon. Further, Gaunt was awaiting trial on Level 1 felony charges. Gaunt, thus, belongs in the Class B credit time classification.

[26] As a person assigned to the Class B credit time classification, Gaunt was entitled to one day of good time credit for every three days of the 915 actual

---

[3] Those offenses are:

(1) Child molesting involving sexual intercourse, deviate sexual conduct (IC 35-42-4-3(a), before its amendment on July 1, 2014) for a crime committed before July 1, 2014, or other sexual conduct (as defined in IC 35-31.5-2-221.5) for a crime committed after June 30, 2014, if:

(A) the offense is committed by a person at least twenty-one (21) years of age; and

(B) the victim is less than twelve (12) years of age.

(2) Child molesting (IC 35-42-4-3) resulting in serious bodily injury or death.

(3) Murder (IC 35-42-1-1), if:

(A) the person killed the victim while committing or attempting to commit child molesting (IC 35-42-4-3);

(B) the victim was the victim of a sex crime under IC 35-42-4 for which the person was convicted; or

(C) the victim of the murder was listed by the state or known by the person to be a witness against the person in a prosecution for a sex crime under IC 35-42-4 and the person committed the murder with the intent to prevent the victim from testifying.

Ind. Code § 35-31.5-2-72.

days he served awaiting trial, which amounts to 305 days of good time credit. We, therefore, remand with instructions that the trial court's sentencing order reflect Gaunt's pre-sentencing credit time to reflect these numbers.

## Conclusion

[27] We conclude that *Wadle* supplanted the common-law double jeopardy rules identified in *Richardson* and adopted in *Guyton*. Gaunt's argument that his convictions violate the common-law elevation rule is, therefore, unavailing. The trial court, however, erred by crediting Gaunt with only 790 days of actual time and 263 days of good time credit. We, therefore, affirm as to Gaunt's convictions, reverse regarding the trial court's credit time calculation, and remand with instructions that the trial court credit Gaunt with 915 days of actual time and 305 days of good time credit against his sentence.

[28] Affirmed in part, reversed in part, and remanded.

Vaidik, J., and Foley, J., concur.